(July 1, 1916.)

In the Matter of the Estate of EMMETT BLACKINTON, Deceased. GRACE A. WOODWARD, Appellant, v. EDWARD B. UTTER et al., Respondents.

[158 Pac. 492.]

ESTATES—PROBATE PRACTICE—ERRORS IN FINAL DECREE OF DISTRIBUTION — APPEALS FROM DECREE IN WHOLE OR IN PART — ADJUDICATION OF TITLE TO REAL PROPERTY — STATUTORY CONSTRUCTION— GRANTS OF HEIR BEFORE FINAL DISTRIBUTION—HEIR'S RIGHT OF ACTION TO CANCEL ANCESTOR'S DEED — UNDERTAKING ON APPEAL

Points Decided.

FROM PROBATE COURT — SALE OF ESTATE PROPERTY TO ADMINIS-
TRATOR'S WIFE.

1. Where obvious mistakes and inconsistencies appear upon the face of a final decree of distribution in the probate court, and such errors are called to the attention of that court by a proper motion to reopen the decree, the motion should be granted and the decree reopened, to the end that the errors may be corrected and the decree as a judicial act conform to the documentary and other evidence upon which it should be based.

2. When two appeals are taken by different heirs from a final decree of distribution in the probate court and such appeals are based upon the same record and are heard together in the district court, that court should adjudicate the whole matter of the settlement of the estate as brought before it on such appeals in one judgment.

3. Under the laws and constitution of this state, the probate court has no jurisdiction to adjudicate questions of title to real property.

4. Under sec. 5634, Rev. Codes, which provides that "Partition or distribution of the real estate may be made as provided in this chapter, although some of the original heirs, legatees, or devisees may have conveyed their shares to other persons, and such shares must be assigned to the person holding the same, in the same manner as they otherwise would have been to such heirs, legatees, or devisees," it is presumed that assignments or conveyances from heirs to persons claiming the right of distribution from the probate court under this section are valid. If the validity of such a conveyance from the heir is disputed by the heir or those claiming under him, the probate court must distribute the property covered by such conveyance to the heirs as if no such conveyance had been made, and the heir's grantee or assignee must seek adjudication of his title to the property in question before the proper tribunal.

5. Where one claiming to be the grantee of an heir asserts a right to distribution from the probate court under sec. 5634, Rev. Codes, and such claimant is neither heir, devisee nor creditor of the estate, he cannot be heard to question the procedure under which distribution of the estate is proposed to be effected.

6. The right to cancel a deed to real property obtained from an ancestor by fraud, duress or undue influence passes to the heirs upon the death of the ancestor, provided the ancestor had not theretofore ratified or acquiesced in the execution of such deed.

7. Sec. 4834, Rev. Codes, authorizes an appeal from the whole or "some specific part" of a judgment or order of the probate court.

8. Sec. 4933a, Rev. Codes, prescribing a form of undertaking on

appeal in civil actions and declaring the legal effect thereof, applies to undertakings on appeal from the probate court.

9. Where an appeal is taken both from a decree and an order denying motion to reopen decree, and both are specifically referred to in the undertaking on appeal, in the form into which the statute imports every condition required by law, and the amount of the penalty is sufficient for both appeals, the legal effect is to comprise two bonds in one instrument, and it must be so construed.

10. Under sec. 5543, Rev. Codes, which provides that "No executor or administrator must, directly or indirectly, purchase any property of the estate he represents, nor must he be interested in any sale," an administrator's wife who receives a deed to property belonging to the estate from an heir before final distribution must show upon adjudication of her title that such deed was intended to convey the property in question to her as her separate property, or the transaction will come under the prohibition of said sec. 5543.

[As to appealable judgments or orders in probate or administration proceedings, see note in Ann. Cas. 1913C, 850.]

APPEAL from the District Court of the Second Judicial District for Nez Perce County. Hon. E. C. Steele, Judge.

Appeal from judgments of the district court setting aside decree of final distribution in the probate court. *Affirmed.*

Ben F. Tweedy, for Appellant.

Under sec. 5702, Rev. Codes, Ann Blackinton, at the time of her death, must have owned the real estate to which her heirs succeed; the section does not include Ann. Blackinton's personal right to maintain an action in the district court to set aside, vacate and annul her deed to appellant, and does not say that her heirs succeed, upon her death, to this personal right of Ann Blackinton to have her own deed annulled by a decree of court. (*Rowland v. Rowland,* 2 Sneed (34 Tenn.), 543.)

Though an executed gift of a bond is secured from an heir's ancestor by undue influence, and though the heir's ancestor is of unsound mind, or insane to the extent of being incapacitated to do business, the heir of such ancestor after the death of the ancestor cannot maintain an action to set aside the executed gift. (*Bishop v. Leonard,* 123 Fed. 981.)

The right to avoid a deed for duress is personal to vendor. (*Schee v. McQuilken,* 59 Ind. 269.)

Ann Blackinton had the absolute right to waive all undue influence, all fraud, all duress, and thereupon to ratify and confirm the deed of conveyance; and this right was personal to her.    (13 Cyc. 591, 592, subn. 8, and notes.)

The district court can try only questions of law or of fact presented to the probate court, and George and William Blackinton presented no question of fact or of law to the probate court for his decision on final settlement and distribution.    (*Estate of McVay,* 14 Ida. 56, 93 Pac. 28; *Kent v. Dalrymple,* 23 Ida. 694, 132 Pac. 301; *In re Christensen's Estate,* 15 Ida. 692, 99 Pac. 829.)

There is only one undertaking on the two appeals contained in the notice of appeal from the December, 1914, decree and the appeal from the February, 1915, order.    (*Horn v. Volcano Water Co.,* 18 Cal. 142; *Bornheimer v. Baldwin,* 38 Cal. 671; *In re Kasson's Estate,* 135 Cal. 1, 66 Pac. 871; *Centerville etc. Ditch Co. v. Batchold,* 109 Cal. 111, 41 Pac. 813.)

The appeal bond or undertaking does not conform to secs. 4834, 4835, Rev. Codes.    (*In re Page's Estate* (on rehearing), 12 Ida. 410, 86 Pac. 273.)

The undertaking on the two appeals is indefinite, uncertain and ambiguous, and no court or person can tell whether it is an undertaking on both appeals, or on only one of the appeals, or what appeal it secures or undertakes with reference to.    (*Wallace v. McKinley,* 6 Ida. 95, 53 Pac. 104; *Kelley v. Leachman,* 5 Ida. 521, 51 Pac. 407; *Weil v. Sutter,* 4 Ida. 748, 44 Pac. 555; *Schiller v. Small,* 4 Ida. 422, 40 Pac. 53.)

A final settlement and distribution cannot by appeal to the district court be divided into "fragments" and changed into a piecemeal final settlement and distribution.    (2 Cyc. 532.)

Sec. 4808, Rev. Codes, authorizes an appeal from "some specific part" of a final judgment or order, but, if in the very nature of things, the final judgment or order cannot be

divided, the party aggrieved cannot appeal from a part thereof and have that part reversed and the other part affirmed. (*Hampton v. Board of Commrs.*, 4 Ida. 646, 43 Pac. 324; 3 Cyc. 220; *In re Burdick*, 5 Cal. Unrep. 6, 40 Pac. 35.)

The probate court, in the settlement of the estate of Emmett Blackinton, has exclusive original jurisdiction of the transmission of decedent's title to whomsoever takes it, upon distribution, as legal owner. (*In re Burton's Estate*, 93 Cal. 459, 29 Pac. 36; *More v. More*, 133 Cal. 489, 65 Pac. 1044; *Connolly v. Probate Court*, 25 Ida. 35, 136 Pac. 205; *Miller v. Mitcham*, 21 Ida. 741, 123 Pac. 941.)

The decree of distribution is a conclusive adjudication on the transmission of the decedent's title to its legal owner, or to the person entitled to it on distribution of the estate being administered. (*Connolly v. Probate Court, supra; Blair v. Hazzard*, 158 Cal. 721, 112 Pac. 298; *In re Burton's Estate, supra; More v. More, supra;* secs. 5627, 5634, Rev. Codes.)

Property conveyed to another by the decedent constitutes no part of his estate in probate to be partitioned by the probate court. (Freeman on Judgments, 4th ed., p. 551, sec. 308a.)

"A purchase of property of the estate by an executor or administrator at a sale under order of court, while universally considered to be highly improper, is usually held to be merely voidable at the election of the persons interested, and not void; and even statutes providing that such sales are void have been construed to mean simply that they are voidable. It follows that until the sale is actually set aside the legal title remains in the representative." (18 Cyc. 771, subn. C, and note 6.)

The probate court has the jurisdiction to decide that Ann Blackinton's deed to appellant is valid, and therefore that respondents could not inherit appellant's real estate. (*In re Walker's Estate*, 169 Cal. 400, 146 Pac. 868; *Coats v. Harris*, 9 Ida. 458, 75 Pac. 243; *In re Daughaday's Estate*, 168 Cal. 63, 141 Pac. 929; *French v. Phelps*, 20 Cal. App. 101, 128 Pac. 772.)

James E. Babb, for Respondent Edward B. Utter.

Appeals cannot be taken in one notice from separate judgments in separate proceedings.    (2 Ency. Pl. & Pr., pp. 219, 220; 2 Hayne on New Trial and Appeal (Rev. ed.), p. 1106.)

The objection having been as to the undertaking that it did not contain the language of sec. 4835, Rev. Codes, we suggest that the undertaking is based not on this section to which counsel refers, but on sec. 4933a, Rev. Codes, which was construed in *Finney v. Moore,* 9 Ida. 284, 74 Pac. 866.

The probate court should have distributed the land included in the deed from Ann Blackinton to Grace A. Woodward and the rentals thereafter accruing therefrom to the heirs, with a reservation of the rights, if any, of Grace A. Woodward under the deed, as such rights may be determined in a proceeding in a court of competent jurisdiction, rather than passing on and enforcing the deed by distributing the property to Grace A. Woodward, the grantee therein.    (*Estate of Howe,* 161 Cal. 152, 118 Pac. 515; *In re Gamble's Estate (Huffaker v. Donnelly),* 166 Cal. 253, 135 Pac. 970; *Martinovitch v. Marsicano,* 137 Cal. 354, 70 Pac. 459; *Coats v. Harris,* 9 Ida. 458, 75 Pac. 243.)

The said deed was void on its face without any evidence, because violating the provisions of sec. 5543, Rev. Codes, annulling any interest acquired from the estate, directly or indirectly for the benefit of an administrator.    (*French v. Phelps,* 20 Cal. App. 101, 128 Pac. 772; *Gardella v. Meeker,* 3 Wash. Tr. 178, 13 Pac. 709; *McDonald v. White,* 46 Wash. 334, 89 Pac. 891.)

The right to cancel a deed procured from an ancestor by fraud, duress or undue influence passes to the heirs where the ancestor has not ratified it or acquiesced in it.    (18 Ency. Pl. & Pr. 763, notes 2 and 3; 4 Ballard's Law of Real Property, sec. 152, pp. 155, 156; 9 Id., sec. 143, pp. 124, 125; 12 Id., sec. 90, pp. 126, 127; *Curtis v. Burns,* 27 Ind. App. 74, 60 N. E. 963; *Groesbeck v. Groesbeck,* 49 Or. 113, 88 Pac. 870; *Marsh v. Marsh,* 78 Vt. 399, 63 Atl. 159; *Samuel v. Marshall,* 3 Leigh (Va.), 567; *Waddell v. Lanier,* 62 Ala. 347; *Coulson*

*v. Coulson,* 180 Mo. 709, 79 S. W. 473; *Hatch v. Hatch* (Utah), 148 Pac. 433.)

Eugene A. Cox, for Respondent George Blackinton.

Appellant does not claim as an heir, devisee or creditor of either Ann Blackinton or Emmett Blackinton, and she cannot be heard to question the procedure by which their estates are distributed. (*Gwinn v. Melvin,* 9 Ida. 202, 108 Am. St. 119, 72 Pac. 961, 2 Ann. Cas. 770.)

The form of undertaking is that prescribed by sec. 4933a, Rev. Codes. This section was adopted to avoid the necessity of having to write in conditions. The statute imports into the form every condition required by law. If the penalty were not sufficient for the appeal from both orders, the bond would be void for uncertainty; but where the appeal is from two specified orders, in the form into which the statute imports every condition required by law, and the penalty is sufficient for both appeals, it is in legal effect two bonds in one instrument, and cannot be otherwise construed without distorting the plain provisions of a statute designed to simplify the practice and save the time of counsel. (*Finney v. Moore,* 9 Ida. 284, 74 Pac. 866; *Edminston v. Steele,* 12 Ida. 613, 87 Pac. 677; *Vane v. Towle,* 5 Ida. 471, 50 Pac. 1004.)

This court has already determined that sec. 4229, Rev. Codes, is a part of the probate practice act. (*Chandler v. Probate Court,* 26 Ida. 173, 141 Pac. 635.)

Geo. W. Tannahill, for Respondent John M. Woodward, Admr., files no brief.

SULLIVAN, C. J.—The facts shown by the record in this case, so far as they are essential to a determination of the issues involved, are as follows:

In December, 1913, Emmett Blackinton died childless, unmarried and intestate. Under our succession law, his only heir was his mother, Ann Blackinton, a widow, who had attained the age of nearly ninety years. He had, however, at the time of his death, other near relatives, among whom were two brothers, William and George, and a nephew, Edward B.

Utter, son of a deceased sister. The daughter of William Blackinton, Grace A. Woodward, the plaintiff in this case, had married a man by the name of John M. Woodward, who was appointed the administrator of the Emmett Blackinton estate soon after the death of the latter.

Without waiting for an administration of the Emmett Blackinton estate, the sole heir, Ann Blackinton, almost immediately proceeded to a distribution of her interests in the greater part of said estate. She deeded to George Blackinton certain lots situated in Bellingham, Washington. On January 14, 1914, she deeded to John M. Woodward, as trustee for certain grandchildren, some property situated in Leland, Nez Perce county. On the same date she deeded to Grace A. Woodward the Emmett Blackinton ranch near Leland, where John M. Woodward, Grace Woodward and herself were then residing, for the consideration of one dollar and maintenance and support by the grantee during the remainder of her life. A little later she caused to be advanced to George and William Blackinton $300 each from the cash of the Emmett Blackinton estate.

However, the ranch deeded to Grace A. Woodward was by far the most valuable part of the Emmett Blackinton estate, its value having been given in the appraisers' report at $10,200; while all the other property of the estate, including cash on hand, was valued at less than $3,000.

After William Blackinton and George Blackinton learned of the existence of the deed from their mother to Grace A. Woodward, they entered into negotiations with the Woodwards and on March 14, 1914, made an arrangement with them which was evidently intended to supersede the deed from Ann Blackinton to Grace A. Woodward. The agreement then made between the Woodwards and the Blackintons was prepared and executed with the assistance of an attorney, and by its terms the parties contracted that the Woodwards should suitably maintain Ann Blackinton while she lived; that William and George Blackinton, in lieu of any interest claimed by them in the property conveyed to Grace A. Woodward, should receive $6,000, $2,000 of which was to be paid

out of the Emmett Blackinton estate, the remaining $4,000 to be paid to them by the Woodwards in ten annual instalments, secured by lien on the land conveyed to Grace A. Woodward. Ann Blackinton, as heir of Emmett Blackinton, entered into a written agreement for the payment of the $2,000 cash to her sons. It does not, however, appear that anything was actually done to carry these agreements into effect, and in August, 1914, Ann Blackinton died intestate, leaving as heirs her sons William and George, and a grandson, Edward B. Utter.

Referring again to the Emmett Blackinton estate, Woodward, the administrator, made his final report in December, 1914. In this report he prayed for a decree distributing the estate in accordance with the deeds of Ann Blackinton to her heirs and Grace A. Woodward, and that the residue of the estate be equally divided among George and William Blackinton and Edward B. Utter, after deducting advances made to the Blackintons. It appears that William and George Blackinton had been under the mistaken belief that they were represented in the estate proceedings by the same counsel who represented Utter; and that they did not see Woodward's final report as administrator, or know that final decree was going to be entered, until some time after its entry had been made.

The administrator's final report and petition for distribution was objected to by Utter, and in the verified objections filed the question of the validity of the deed to Grace A. Woodward was raised. It was alleged that at the time Ann Blackinton executed this deed she was so far mentally and physically incapacitated as to be incapable of making a valid contract, and that she executed the purported deed by reason of duress and undue influence on the part of John M. Woodward. Similar allegations were made in the affidavit of William and George Blackinton in support of their motion to reopen the decree which was filed later on. As no counter-affidavits were filed, a certain degree of verity must be imputed to these objections of Utter to the final account, as well as to the affidavit of William and George Blackinton in support of their motion. As the appeals were heard in the dis-

trict court on questions of law. only, no oral evidence appears in the record in this court, and it does not appear that any evidence was taken in the probate court except that of John M. Woodward on settlement of the administrator's final account.   The objections of Utter were overruled.

With regard to the decree in the Emmett Blackinton estate, as finally entered by the probate court, counsel have pointed out a number of obvious mistakes and inconsistencies.   It was recited in this decree that both Emmett and Ann Blackinton died *testate,* whereby, of course, the title to all the property proposed to be distributed became clouded.   It directed the distribution of a considerably larger amount of cash than was shown to be on hand by the administrator's report.   There are other serious defects in the decree to which it is not necessary to call attention here, but the errors apparent upon its face so far impaired its value as a judicial act that it should have been reopened and corrected upon application by the interested parties.   This decree distributed to Grace A. Woodward the property alleged to have been conveyed to her by Ann Blackinton, "subject to the rights of Edward B. Utter, if any, to litigate the same in a court of competent jurisdiction."

Rev. Codes, sec. 4229, provides for parties aggrieved a means of relief from a decree such as the one under consideration, since this provision of the statute has been held to apply to probate practice in this state.   (*Chandler v. Probate Court,* 26 Ida. 173, 141 Pac. 635.)   William and George Blackinton, although they had not theretofore appeared in the matter of this estate in the probate court, sixty days after the entry of the decree moved to set it aside, so that the matter might be reopened and a new decree framed which should be correct in form, leaving all the parties free to assert their rights in a court of competent jurisdiction to determine questions of title and thereby obviate the necessity of an appeal from this defective decree.   They allege, among other reasons, that they had no actual notice or knowledge of the filing of the administrator's final report and petition for distribution, nor of the time and place of hearing, and had had no opportunity to

appear. In the meantime a new probate judge had taken office and, the motion being resisted, he declined to set aside a decree entered by his predecessor, and the motion was denied.

On February 19, 1915, Utter appealed from portions of the decree of distribution to the district court, and a few days later the Blackintons appealed both from the decree and the order denying the motion to reopen the decree. In the district court both appeals were heard together, only questions of law being passed upon. Those portions of the decree of the probate court from which Utter appealed were set aside and the probate court was instructed as to the form of the decree to be entered with regard to those matters in which the original decree was found to be erroneous. It was also ordered that the matter should be set for hearing anew in the probate court and notice given of such hearing. With reference to the decree to be entered by the probate court, that court was instructed as follows:

"That in entering the final order and decree upon such additional hearing to be had as aforesaid in the probate court, the said probate court shall not make any findings concerning the execution, acknowledgment and delivery of the alleged deed from Ann Blackinton to Grace Woodward dated January 14, 1914, or of any other deed or deeds or instrument of writing (validity of which was or may be disputed by Edward B. Utter or any party in the court below) affecting title to the real property described in said deed, or encumbering the same or purporting to affect the title thereto or encumber the same, and that said probate court shall not in any such order or decree distributing the property of the estate affected by any such conveyance or other instrument, including rentals accruing from lands subsequent in date to any such deed or instrument, distribute or vest any such real property or rents therefrom, or lien thereon, to or in any grantee or assignee, or other party, in any deed or instrument, but shall distribute the same to and vest the same in the proper successors of said Ann Blackinton deceased, the same in all respects as if the deeds and instruments had not been executed, save only that such

order and decree of distribution shall declare that such distribution of the property is subject to the rights, if any, of any grantee, in any such deed, or party to, or in interest in, any such other instrument, as such rights, if any, may be adjudged in any action begun, or to be begun, in any court of competent jurisdiction.''

Edward B. Utter's judgment was filed in the district court on June 17, 1915, and the judgment on the Blackinton appeal reversing the decree of the probate court was filed on June 18th. The judgment on the Blackinton appeal was very similar to the judgment in the Utter appeal, and considerable confusion and inconvenience would have been obviated if the district court had entered only one judgment covering the whole matter of both appeals from this decree of the probate court, as it might properly have done. The appeals were taken about the same time upon the same record; were argued to the court together, and judgments were filed in each of them only a day apart. Counsel for respondents raise the point with reference to the single appeal of Grace A. Woodward in this court from both these judgments, that appeals cannot be taken in one notice from separate judgments in separate proceedings. We are not, however, disposed to favor technical contentions in a proceeding of this nature, especially as it does not appear that respondents have in any way been prejudiced by having the appeals from their two judgments joined in one proceeding in this court. On the other hand, counsel for appellant moved the district court to dismiss the Blackinton appeal for the reason, among others, that William and George Blackinton ''never presented to the probate court any issue of law or fact, and that, therefore, their appeal presents to the appellate court no issue of law or fact to be decided, and the appellate jurisdiction is confined to such issues of law and fact as were presented to the probate court.'' As a matter of fact, the Blackintons' case had been substantially presented in the Utter appeal. This discloses another reason why the district court should have considered the whole matter as one proceeding, and entered one judgment adjudicating as far as possible the claims of all parties

interested in the single matter of the Emmett Blackinton estate.

The main question in this case arises from the action of the probate court in upholding by its decree of distribution the validity of the Grace A. Woodward deed. Counsel for appellant contends that under sec. 5634, Rev. Codes, appellant had a legal right to have the real property described in her deed from Ann Blackinton distributed to herself. This section provides that "Partition or distribution of the real estate may be made as provided in this chapter, although some of the original heirs, legatees or devisees may have conveyed their shares to other persons, and such shares must be assigned to the person holding the same, in the same manner as they otherwise would have been to such heirs, legatees, or devisees." Counsel calls attention to the mandatory word "must" as used in this section, and concludes accordingly that the probate court has no jurisdiction "to set aside, to vacate, annul and cancel appellant's deed, or the deed of any heir, which conveys to the grantee this right to distribution" under said section. In other words, he contends that the mere presentation to the probate court of an instrument purporting to be an heir's deed constitutes a *prima facie* showing as against the heir or those claiming under the heir, and that the probate court has no alternative but to distribute the property conveyed by such deed to the grantee, putting the burden upon the heir or those claiming under him to show that they have the better title.

However, we do not think the legislature intended to give sec. 5634 the meaning urged by counsel for appellant. The regular line of succession to real property both under the common law and under the statute law is from ancestor to heir or devisee, and the machinery of the probate court is designed to effect such devolution of property as expeditiously as possible. It is true that sec. 5634 permits a diversion of title to a given parcel of real property from the regular order of succession when a conveyance from the heir or devisee is presented to the court. But when the validity of the instrument so offered is challenged, then the issue of title is at once

raised, which the probate court has no power to determine, and which can only be adjudicated in the district court. In that event, therefore, so far as the probate court is concerned, it must permit the stream of succession to flow in its usual course, and must distribute the property in question to the heir, leaving the grantee under the disputed deed to try out the issue of his title in the district court.

It must be assumed that sec. 5634 only authorizes the probate court to divert the estate from the heir when a grant, the validity of which is undisputed, is submitted to it as a basis for such action. It is not conceivable that the legislature meant by this statute to compel the probate court to change the regular order of succession from ancestor to heir in favor of a stranger, upon the submission to it of any instrument whatever purporting to convey the heir's title, no matter how doubtful the authenticity of that instrument might be shown to be.

Since the probate court cannot try out the question of title, it must follow that either the heir or the grantee who claims against the heir must suffer the inconvenience of having to establish his rights in the district court. The hardship is the same in either case, and under our law it is unavoidable. This being so, it is apparently sound reason which places the burden of proving title on the stranger rather than on the heir to whom title would otherwise regularly descend. Heirs of estates are often young or inexperienced in the transaction of business, and sometimes, as possibly in this instance, they are lacking in capacity to make a valid contract. Pressing necessities may force them to raise money on their expectations, and as the value of their interests is somewhat uncertain until the estate is finally settled, it may easily happen that they are induced to part with their inheritance to designing persons for inadequate considerations. This may be deemed a controlling reason for requiring those who obtain conveyances from heirs before the settlement of an estate to establish their rights in a court of equity if the conveyance is questioned in the probate court.

In this case the judgment of the district court directing the probate court to distribute the property in question to the heirs expressly reserved to appellant the right to have her title adjudicated in a proper action before the proper tribunal, and the entry of a decree in the probate court in accordance with that judgment will in no way preclude her from exercising that right.

Counsel for appellant further contends that the probate court had no jurisdiction to distribute the estate of Emmett Blackinton to the heirs of Ann Blackinton, who was the only heir of Emmett Blackinton. In this connection it will be borne in mind that Ann Blackinton also died intestate, and that there was no administration of her estate. Counsel does not claim that there are any creditors of her estate, or that the persons to whom the Emmett Blackinton estate would be distributed by the decree were not the same persons who would receive it upon probate of Ann Blackinton's estate. It may be conceded that the procedure followed might not be good as against creditors of Ann Blackinton or contesting claimants of her estate as heirs, but we think they are sufficient as against strangers, and so far as appellant's rights under the purported deed from Ann Blackinton are concerned, she must be considered as a stranger, since she does not claim as an heir, devisee or creditor of either Emmett Blackinton or Ann Blackinton. This being the case, she cannot be heard to question the procedure under which distribution of their estates is proposed to be effected. (*Gwinn v. Melvin*, 9 Ida. 202, 108 Am. St. 119, 72 Pac. 961, 2 Ann. Cas. 770.)

Another contention upon which counsel for appellant lays much stress is that the right of Ann Blackinton to attack appellant's deed for fraud or upon other grounds does not descend to the heirs of Ann Blackinton; in other words, that it was a personal right which died with her, and that upon the death of Ann Blackinton appellant's deed became incontestable. We are unable to subscribe to this doctrine. If it were the law, any criminal might by duress or fraud extort a deed of valuable property from an unconsenting grantor,

and by making way with him immediately thereafter, leave the heirs of the grantor wholly remediless.   The right to cancel a deed obtained from an ancestor by fraud, duress or undue influence passes to the heirs, provided the ancestor had not committed acts amounting to ratification before his death. (9 Ballard's Law of Real Prop., sec. 143; *Curtis v. Burns*, 27 Ind. App. 74, 60 N. E. 963; *Groesbeck v. Groesbeck*, 49 Or. 113, 88 Pac. 870; *Marsh v. Marsh*, 78 Vt. 399, 63 Atl. 59; *Waddell, Admr., v. Lanier*, 62 Ala. 347.)

Counsel for Grace A. Woodward moved in the district court to dismiss the appeals of the Blackintons and Utter from the probate court upon a number of grounds.   Particular objection was taken to the Utter appeal on the ground that it purported to appeal from only parts of the decree of final distribution; it is contended that a final decree must be held to be indivisible, and that it cannot by appeal to the district court be "changed into a piecemeal final settlement and distribution."   Counsel cites 2 Cyc. 532, to the effect that a litigant cannot on appeal "divide a case into parts and carry it up by fragments."   However, sec. 4834, Rev. Codes, prescribing the manner of taking an appeal from the probate court to the district court in probate matters, contains the following language:

"An appeal from the probate court in probate matters is taken by filing with the clerk of the probate court in which the judgment or order appealed from is made or entered, a notice stating the appeal from the same, *or some specific part thereof.* . . . . "

We think this language of the statute clearly authorizes the taking of an appeal from a part or parts only of a decree of final distribution in the probate court.   Such decrees involve the settlement of the accounts of the administrator or executor, in which a number of unrelated groups of items may be involved.   Furthermore, there may be many distributees under the decree, whose rights may be variously affected, but there would seem to be no practical reason why the appeal of any one of these from the particular part of the decree affecting him should unsettle all the other provisions of the decree

against which no objection is raised. These considerations very probably had weight with the legislature in authorizing an appeal from "some specific part" of the decree, and the language of the statute appears to be too plain to call for construction.

Another ground for Grace A. Woodward's motion to dismiss the appeals of respondents in the district court was the contention that the undertakings on appeal of both Utter and the Blackintons were insufficient, in that these undertakings do not contain the language prescribed by sec. 4835, "to the effect that the appellant will pay all damages and costs which may be awarded against him on the appeal or on a.dismissal thereof, not exceeding one hundred dollars." This section is embraced in the chapter of the Code of Civil Procedure relating to "Appeals from Probate Court to District Court in Probate Matters," and counsel for appellant in this court contends that undertakings on appeal to the district court in probate matters must conform to its provisions. On the other hand, counsel for respondents contend that these undertakings were based on the provisions of sec. 4933a, which prescribes the following form, and declares the legal effect of the execution:

"Whereas the —— desires to give an undertaking for [state what] —— now, therefore, we, the undersigned sureties, do hereby obligate ourselves jointly and severally, to —— [name who] under said statutory obligations in the sum of —— dollars.

"The sureties so signing such undertaking are bound to the full statutory obligations of the statute requiring the undertaking."

The sufficiency of an undertaking based on this section has already been passed upon in *Finney v. Moore,* 9 Ida. 284, 74 Pac. 866, but the question here is whether sec. 4933a applies to appeals from the probate court, or whether the provisions of sec. 4835 prescribing the language to be used in such undertaking on appeals from the probate court are exclusive. We think, however, that this matter is controlled by sec. 5665, which provides that "The provisions of Part 2 of this Code,

relative to new trials and appeals—except in so far as they are inconsistent with the provisions of this title—apply to the proceedings mentioned in this title.'' Now ''this title'' (Title X) embraces Probate Proceedings, and sec. 4933a, upon which these undertakings are based, is found in Part 2 of the Code of Civil Procedure, which sec. 5665 makes applicable to Title X relating to probate proceedings.

The undertaking on the appeals of William Blackinton from the probate court was also objected to as being insufficient, in that, although it purported to cover both the appeal from the final decree and the appeal from the order denying motion to reopen the decree, it failed to specify which appeal the undertaking was intended to secure. Of course, if the penalty of the bond were not sufficient to cover both appeals, the bond would be void for uncertainty, but where an appeal is taken from two orders, which are specifically referred to, in the form into which the statute imports every condition required by law, and the amount of penalty is sufficient for both appeals, the legal effect is to comprise two bonds in one instrument and it must be so construed. In this instance the penalty of the bond was $200, the statutory amount for both appeals.

Counsel for both appellant and respondents raise a number of other questions on this appeal which, in the view we take of the case, need not be considered in this opinion. There is, however, one question which perhaps should be referred to at this time, as it must arise in any litigation brought to determine the validity of the Grace A. Woodward deed. This purported to be a warranty deed, drawn in the usual form, to consummate a sale of real property from Ann Blackinton to Grace A. Woodward. The consideration named was one dollar, and this clause was inserted before the usual covenants: ''The following covenants are made with the express condition that the said grantor shall be cared for and *mainted* as becoming her station and age during the remainder of the life of the said grantor by the said grantee.'' Now, Grace A. Woodward's husband, John M. Woodward, was at that time administrator of the Emmett Blackinton estate to which

belonged the property conveyed by this deed.  Sec. 5543, Rev. Codes, provides: "No executor or administrator must, directly or indirectly, purchase any property of the estate he represents, nor must he be interested in any sale."  The office of administrator of an estate being of a highly fiduciary nature, this statute may be considered as merely declaratory of the fundamental principle of trusteeship which inhibits the trustee from dealing with the subject matter of the trust in any way which may inure to his personal profit.  Under our law, the presumption is that a conveyance of property to the wife. is a conveyance to the community, and in case of contest the burden is upon the grantee to show that it was intended to be conveyed to her as her separate property.  In this instance the presumption is heightened by the actual consideration disclosed, which is that the grantor shall be cared for and maintained during the remainder of her life by the grantee.  It can hardly be presumed that such consideration would be performed by a married woman without the participation of her husband.  If this conveyance was made to the community, it is clear that the administrator acquired such an interest in the property attempted to be conveyed as would amount.to a violation of the provisions of the statute, and that this fact alone would make the deed voidable if not absolutely void. (*French v. Phelps*, 20 Cal. App. 101, 128 Pac. 772; *Gardella v. Meeker*, 3 Wash. Ter. 178, 13 Pac. 709.)  It will therefore devolve upon appellant, when the issue of title to the property in question is tried out in the lower court, to prove, if she can, that this property was deeded to her as her separate property.

It is stipulated between the attorneys in this case that since the entry of judgment in the lower court William Blackinton has died, and that his executrix, Francis Blackinton, may be substituted in his place for all the purposes of this action.

After a careful consideration of the whole record in this case, we conclude that the judgment of the district court should be affirmed, and it is so ordered.  Costs awarded in favor of respondents.

Budge and Morgan, JJ., concur.

### ON PETITIONS FOR REHEARING.

(July 14, 1916.)

SULLIVAN, C. J.—Petitions for rehearing have been filed in this case, both on behalf of appellant Grace A. Woodward and respondent Edward B. Utter.

Counsel for appellant has restated with much earnestness and ability the points already relied upon in his printed briefs, but we are unable to discover that he has thrown any new light on his contentions. He assumes as the basis of his argument that appellant's deed is valid, which is one of the controverted points in the case. He says: "The court fails to note that the succession as to the legal title can be disturbed by a warranty deed, and I cited Judge Freeman to prove it, as well as other authority. I am entitled to a decision." The court does not question this statement of authority, but it must certainly be assumed to refer to a *valid* warranty deed only. Does counsel contend that a *void* warranty deed would disturb or have the slightest effect on the succession of title?

Here we have a deed which purports to have been executed by a woman nearly ninety years of age, for a nominal consideration, conveying valuable property of an unsettled estate to which she was sole heir, to the wife of the administrator of that estate with whom she was living at the time. It is not disputed that she was exceedingly feeble both in mind and body when she executed this deed, and that she died a few months thereafter. In view of the fact that the validity of the deed is still to be adjudicated, it may not be proper to express an opinion here as to the presumptions which arise with regard to a grant executed under such circumstances, but they will suggest themselves to the mind of any lawyer. Is the probate court bound by the provisions of sec. 5634, Rev. Codes, to make distribution to any grantee of an heir upon any sort of grant whatever, even in the face of uncontroverted affidavits alleging duress and undue influence in obtaining the grant? We think not.

Counsel for respondent Edward B. Utter complains of the language used by the court in pointing out at the close of the opinion that under the provisions of sec. 5543, Rev. Codes, prohibiting the administrator from acquiring any interest in the property of the estate, it will "devolve upon appellant to prove, *if she can,* that the property was deeded to her as her separate property." The essence of counsel's objection seems to be that under the law, as he views it; and the terms of the instrument in question, it will be impossible for appellant to make such proof, and he thinks this court should not have intimated that there was even a possibility of her being able to do so. We express no opinion as to what evidence would be admissible or inadmissible regarding the nature of the interests conveyed, if any, by the Grace A. Woodward deed; neither. is the question of the validity of that deed before us at this time. But since the deed, under the inhibition of the statute, can in no event take effect except as making a grant of separate property to the grantee, it seemed proper, in view of the importance of this point in any future adjudication of the title, to express the opinion of the court as to the application of the statute to the facts shown by the record in this case. These last observations are merely suggestions and not binding on the parties to this action.

The petitions for rehearing are denied.

Budge and Morgan, JJ., concur.