(No. 6074. May 31, 1934.)

ANNIE FACKRELL WILSON, Appellant, v. SEYMOUR
FACKRELL and CHRISTIE F. BRUNSON, Respond-
ents.

[34 Pac. (2d) 409.]

J. H. Andersen, for Appellant.

F. J. Cowen, L. R. Thomas, Otto E. McCutcheon, and Black & Baum, for Respondents.

MORGAN, J.—This is an appeal from a judgment of the district court on appeal from a decree of the probate court of Bingham county in a proceeding wherein appellant here sought specific performance of a contract executed by Willard Fackrell, now deceased. Trial in the district court resulted in a judgment dismissing the proceeding without prejudice to the right of petitioner to sue for specific performance of the contract within the time allowed by law. The appeal is by petitioner, from the judgment.

I. C. A., sec. 15–1001, is as follows:

"When a person who is bound by contract in writing to convey any real estate, dies before making the conveyance, where such decedent, if living, might be compelled to make such conveyance, the probate court may make a decree authorizing and directing his executor or administrator to convey such real estate to the person entitled thereto."

Section 15–1002 provides for giving notice of hearing on presentation of a petition by a party claiming to be entitled to such conveyance, setting forth the facts upon which the claim is predicated. Section 15–1003 provides that all persons interested in the estate may appear and contest the petition, by filing objections in writing, and that the court may examine, on oath, the petitioner and all who may be produced before him for that purpose. Section 15–1004 is as follows:

"If, after a full hearing upon the petition and objections, and examination of the facts and circumstances of the claim, the court is satisfied that the petitioner is entitled to a conveyance of the real estate described in the petition, a decree authorizing and directing the executor or administrator to execute a conveyance thereof to the petitioner must be made, entered on the minutes of the court, and recorded."

Section 15–1005 requires the executor or administrator to execute the conveyance according to the directions of the decree, and sec. 15–1006 is as follows:

"If, upon hearing in the probate court, as hereinbefore provided, the right of the petitioner to have a specific performance of the contract is found to be doubtful, the court must dismiss the petition without prejudice to the rights of the petitioner, who may, at any time within six months thereafter, proceed, in the district court, to enforce a specific performance thereof."

The probate court, after hearing, entered a decree directing that a deed be executed by the administrator conveying a two-thirds interest in certain property to petitioner.

Respondents herein appealed to the district court from the decree and appellant herein moved to dismiss the appeal, which was overruled and the ruling is assigned as error. In support of this assignment appellant asserts that secs. 15–1004 and 15–1006 do not provide for an appeal by a petitioner and, by analogy, no appeal should be allowed by the objectors unless for an abuse of discretion of the probate court.

The contention is without merit. Where, as in this case, the probate court decrees specific performance of a contract, one objecting to the petition has no remedy except by appeal, and his right to do so is granted by I. C. A., sec. 11–401, which provides:

"An appeal may be taken to the district court of the county from a judgment, or order of the probate court in probate matters: . . . .

"5. Against or in favor of directing the . . . . conveyance of real property." (*Estate of Corwin,* 61 Cal. 160; *In re Potter's Estate,* 141 Cal. 424, 75 Pac. 850.)

December 12, 1929, Willard Fackrell died intestate leaving surviving three brothers and three sisters, among them being the parties to this appeal. Appellant was a trained nurse before her marriage and, in 1917, took care of her brother, Willard Fackrell, for a period of about seven and a half weeks during an attack of typhoid fever. These services, which she rendered, and payment by her of his doctor's bills, which she made, were understood and intended by her to be gratuitous. About April 22, 1922, Fackrell delivered to appellant a sealed envelop, and stated to her, in substance: "Here is a contract conveying to you two-thirds of the building at Blackfoot for taking care of me when I was sick." He also told her one Davis, who was his agent at Blackfoot, had a copy of the contract in case the one he delivered to her should be destroyed. Appellant accepted the envelop and its contents and kept them in her possession until after her brother's death.

After Fackrell's death, while his brothers and sisters and Davis were looking through his papers, appellant, on

being asked by one of her brothers if deceased had left any other papers than those they were examining, produced the envelop, which had not been opened since it was delivered to her, and it was thereupon opened and found to contain an instrument on a printed form entitled "Contract of Sale." It was therein recited:

"THIS AGREEMENT, entered into between Willard Fackrell of Blackfoot, first party, and Annie Fackrell of ——————, second party, WITNESSETH:

"That the said first party agrees to sell and the said second party agrees to purchase on the terms herein set forth, the following described tract of land, situate in the County of Bingham, State of Idaho, to-wit: an Undivided ⅔ Interest to the following Described Lots. The West 24 feet and 6 Inches off from the Lots One to Four Inclusive The West 24 Feet and six Inches off the North 10 Feet, of Lot 5 In Block 31 Danielsons Addition to Blackfoot, Bingham County Idaho.

"The said second party agrees to pay to the said first party at Blackfoot for said land and the water right appurtenant thereto the sum of $2000.00 in follows: $2000.00 Cash and Hospital Fees fully Paid."

Blank spaces in the contract for instalments of payments of the purchase price were not filled in. Provisions were made for interest on deferred payments, if not paid when due; that second party pay the taxes and assessments on the property for 1918 and subsequently, and that first party convey the property to second party by good and sufficient warranty deed when the payments were made. Then followed covenants and agreements, usually found in printed forms for such contracts, with respect to time being of the essence; right of first party to declare a forfeiture for failure of second party to conform to the contract; to retain payments theretofore made as rental and liquidated damages, and that second party would be entitled to possession so long as the terms of the contract were complied with. The date of execution was in the document stated to be May 1, 1918; the instrument was signed with the

signature of Willard Fackrell and witnessed by J. H. Mc-Donald. On the back of the document appears the following endorsement, "$2000.00 Paid this first day of May 1918 Which Pays This Contract up in Full." This instrument was introduced in evidence, as was a duplicate thereof, including the endorsement, produced by Davis, with whom Fackrell left it for safekeeping.

Appellant had not read the contract prior to her brother's death; did not know the contents thereof and had not agreed to the terms nor paid any part of the purchase price therein named. After delivering the sealed envelop, containing the document, to appellant, her brother caused the rentals arising from the property, after payment of expenses incident thereto, to be placed in a bank in a joint account of himself and appellant, and this joint account was maintained and the net returns from the property were placed therein until his death. Appellant drew no checks against the joint account, nor did she, personally, receive any of the money from the rents during her brother's lifetime, although she testified she could have done so.

The petition to the probate court appears to have been prepared on the theory that the document here under consideration was an executory contract for the sale by Fackrell, and purchase by appellant, of a two-thirds interest in the property therein described; that petitioner had kept and performed the covenants and agreements therein contained to be by her kept and performed so as to entitle her to a deed conveying said interest in the property to her during the lifetime of Fackrell and was, therefore, entitled to a conveyance from the administrator of his estate.

The evidence does not support the theory that a valid, executory contract existed between Fackrell and appellant, binding the former to sell, and the latter to buy, an interest in the property in question. There was no meeting of the minds and no agreement, on appellant's part, to purchase or pay for the property, nor does it appear there was any intention on Fackrell's part to sell

it, or that she should pay for it. It is said in 58 C. J., 849:

"The remedy of specific performance presupposes the existence of a valid contract between the parties to the controversy, or between those through whom they claim, the contract being generally required to have the essentials of a contract valid and binding at law in order to be enforceable in equity. It must be a concluded contract; there must have been a clear mutual understanding and a positive assent on both sides as to the terms of the contract."

In order for appellant to be entitled to the relief sought the proof must show Fackrell was bound, by contract in writing, to convey two-thirds interest in the real estate in question to her and that it was such a contract that he, if living, might be compelled to make the conveyance.

The clear purpose of section 15–1001 is to give one who would be entitled to specific performance of a contract, evidenced by writing, to convey real estate, against a deceased person, if alive, a right to require conveyance of it from the executor or administrator of his estate. If the right to the conveyance is clear relief is to be granted by the probate court, if doubtful, recourse must be had to suit for specific performance in the district court.

 If the record disclosed nothing but the execution and delivery of the document by Fackrell to appellant it would show no right in her to the relief sought and an affirmance of the judgment appealed from would follow, but as the record now stands, the proof shows a completed gift, *inter vivos*, evidenced by the writing, exhibit A, of two-thirds interest in the property by Fackrell to his sister, which constitutes an executed contract.

In addition to the facts heretofore stated, Fackrell, on January 23, 1918, and prior to the execution or delivery of the document to appellant, conveyed the property to Davis by instrument in form a warranty deed, but which was given to secure the payment of indebtedness due from the former to the latter. Davis retained title until May 5,

1927, at which time, the debt having been paid, he deeded it back to Fackrell.

While legal title to the property stood in the name of Davis, as security for a debt, Fackrell, desiring to give two-thirds interest in it to his sister, delivered to her a sealed envelop containing the document hereinbefore discussed, with a statement to the effect that it was a contract conveying said interest to her for taking care of him when he was sick. She received the paper and kept it, understanding the interest in the property was a gift to her from her brother and she accepted and retained it as such. There is no suggestion of undue influence exercised on Fackrell to procure him to make the gift, nor that he was incompetent. It is our duty to give effect to his acts and to construe the writing executed by him, if possible, in such way as to carry out his purpose. He does not appear to have been learned in the law, and probably did not know, as lawyers do, that his deed to Davis was a mortgage. We are unable to put any other construction on his conduct in executing the instrument in which he recited he would convey a two-thirds interest in the property to his sister on payment of $2,000 and, on the same day, endorsing on it a statement that said sum had been paid in full and, after delivering it to her, opening a joint bank account and therein depositing, to her credit and his, the net proceeds of the property as they accrued, thereby, as nearly as it was possible to do under the circumstances, placing her in possession of the interest which he intended should be hers, than that his purpose was to make her the owner of an undivided two-thirds interest in the property in question.

It is said in *Estate of Malone*, 13 Phila. (Pa.) 313, quoting from *Bond v. Bunting*, 78 Pa. (28 P. F. Smith) 213:

" 'It is certainly the tendency of all modern authorities to maintain the general doctrine which may be stated as a formula, that whenever a party has the power to do a thing (statute provisions being out of the way), and means to do it, the instrument he employs shall be so construed as to give effect to his intention.' "

Fackrell, having executed and delivered the document contained in the envelop; having stated his purpose in doing it and having carried out that purpose by creating the joint bank account and placing the net proceeds from the property therein, could not, had he changed his mind, (and he showed no disposition to do so) have revoked the gift.

The Supreme Judicial Court of Maine, in *Barker v. Frye*, 75 Me. 29, said:

"The property (a bank deposit) having been previously conveyed to the plaintiff though by gift, that gift could not be revoked."

The court further said, quoting from 3 Parsons on Contracts, 6th ed., 360:

"If the contract is executed wholly, or, if not wholly, yet in a substantial degree, and there remains something to be done to complete the title, or otherwise render the enjoyment more beneficial to plaintiff, equity will require that thing to be done, although the promise was wholly voluntary."

Although the document delivered to appellant expressed a sale, the proof now before us shows it evidenced a gift.

The syllabus in *Van Deusen v. Rowley*, 8 N. Y. 358, is as follows:

"Where a father transfers to an adult son who has occasionally performed services for which no charge was made, a quantity of bank stock reciting in the transfer, that it is 'for value received,' the transaction is a gift and not a sale.

"Such a gift, if made while the donor has sufficient mental capacity to transact business with his own family, although not to transact business generally, if made fairly is valid."

The fourth section of the syllabus in *Simpson v. League*, 109 Md. 286, 72 Atl. 1109, is as follows:

"There having been no fraud or imposition, but a person of sound mind having voluntarily made and completed a gift, it will not be set aside because of his changing his mind, or because his act appears absurd or improvident."

The Georgia Supreme Court, in *Vickers v. Vickers,* 133 Ga. 383, 65 S. E. 885, 24 L. R. A., N. S., 1043, said:

"Equity will not allow a donor to reclaim property, the title to which he has unconditionally placed in another, merely because he has had a quarrel with the donee." (See, also, *Pickslay v. Starr,* 149 N. Y. 432, 44 N. E. 163, 52 Am. St. 740, 32 L. R. A. 703; *Mulfinger v. Mulfinger,* 114 Md. 463, 79 Atl. 1089.)

The Supreme Court of Michigan, in *Reagan v. Murray,* 176 Mich. 231, 142 N. W. 545, 548, said:

"If deceased acted understandingly he had a right to dispose of his property as he saw fit, even though it might be inequitable.

"In *Beadle v. Anderson,* 158 Mich. 483, 123 N. W. 8, this court said: 'The fact that a division is not equal between children regarded apparently with equal affection is no sufficient reason to disturb a disposition of property so made, as has been many times declared.'"

It is said in 28 C. J. 621:

"On account of want of consideration, a gift does not come within the legal definition of a contract and while still unexecuted confers no rights upon the donee. Nevertheless, every perfected gift is an executed contract, founded on the consent of the parties; and where no rights of creditors intervene to affect its validity, such a transaction stands upon the same footing as contracts founded upon a valuable consideration."

The judgment appealed from is reversed and the cause is remanded to the district court with direction to give the parties an opportunity to offer further evidence as to whether or not Fackrell made a completed gift of the interest in the property to appellant. If no further evidence is offered on that point, or if that offered does not rebut the proof now in the record that such gift was made and accepted, the district court is directed to affirm the decree of the probate court.

Costs on appeal are awarded to appellant.

BUDGE, C. J., Concurring Specially.—The difficulty confronting the court in this case is due to a loose allegation in the petition to the effect that the instrument, the basis of the controversy, is an executory contract for the conveyance of the property involved. Notwithstanding that loose allegation, the instrument pleaded, from its content, shows that it was an executed contract and not an executory contract, and that it was enforceable during the lifetime of the parties. The undisputed testimony establishes the fact that the contract, by reason of the transactions that took place between the parties, became and was an executed contract. The judgment should be reversed for the reason that in finding of fact number two the court finds: "and it does not appear to the Court that Willard Fackrell ever intended the contract to take effect in his lifetime.", and also for the additional reason that the court erroneously concluded "That the said Willard Fackrell never intended said contract to become effective during his lifetime," the finding being contrary to the evidence and the conclusion contrary to the law. The evidence would support a finding that it was the intention of Willard Fackrell that the contract was to take effect during his lifetime, and no other finding could be supported by the record. If for no other reasons, the judgment should be reversed and the cause remanded with instructions to the trial court to order a rehearing in the probate court, and if desired by either of the parties, an amendment of the pleadings.

Holden, J., concurs.

WERNETTE, J., Dissenting.—The appellant filed a petition in the probate court asking that a decree be entered directing that a conveyance of a two-thirds interest in the real estate in question be made to her. The probate court, after a hearing, entered such a decree, from which an appeal was perfected to the district court. It is conceded by the majority opinion that the petition to the probate court was prepared on the theory that the instrument in

question was an executory contract for the sale by Fackrell, and purchase by appellant, of the two-thirds interest in the property in question, and that the appellant, who was petitioner, had complied with and performed her part of the agreement to be performed on her part entitling her to a deed of a two-thirds interest in the property during the lifetime of Fackrell, and, therefore, under the statute, entitled to a conveyance of a two-thirds interest by the administrator of the estate. In the trial before the district court both parties again tried the issues on the theory that the instrument was an executory contract, as apparently had been the theory at the hearing before the probate court. The sole contention of the appellant in the trial of the case in the district court being, that the instrument in question was an executory contract, which could have been enforced as against Fackrell during his lifetime. The respondent was only required to meet that issue. Considerable oral testimony was introduced before the district court. The trial court made findings and entered judgment holding, in effect, that the instrument in question was not an executory contract for the sale and purchase of real property, which could have been enforced during the lifetime of the deceased, which judgment was rendered upon the theory on which the case was tried before it. In Mr. Justice Morgan's opinion it is stated:

"The evidence does not support the theory that a valid, executory contract existed between Fackrell and appellant, binding the former to sell, and the latter to buy, an interest in the property in question. There was no meeting of the minds and no agreement, on appellant's part, to purchase or pay for the property, nor does it appear there was any intention on Fackrell's part to sell it, or that she should pay for it."

And I fully agree with Mr. Justice Morgan that the record supports said statement.

After the trial court had rendered its judgment, an appeal was perfected to this court, and the case was again presented on the sole theory as to whether the instrument in

question was an executory contract for the sale and purchase of real property, which could have been enforced by appellant against the deceased, Fackrell, during his lifetime; appellant contending that it was such a contract, as supported by the record, and respondent contending that it was not. It was never contended by appellant, either in the trial court or in this court, that the instrument in question, supported by the proof in the lower court, showed a completed gift *inter vivos*. The case was neither tried in the lower court, nor briefed and presented to this court, on that theory. In fact, during the oral argument before this court, when the attorney for appellant was asked by one of the members of this court if he was contending that the transaction constituted a gift, his answer was in the negative. The effect of Mr. Justice Morgan's opinion is, that the lower court was right in its decision, on the theory on which the case was tried, but notwithstanding that fact, it was wrong. The opinion does not hold that the lower court was wrong by reason of the theory on which the case was tried in the lower court or in this court, but by reason of a new theory introduced in the opinion, that is, that appellant may recover provided the respondent is unable to put forth further evidence to overcome this new gift theory.

In the special concurring opinion of Mr. Chief Justice Budge and Mr. Justice Holden, they evade the issue that is really before us. In such opinion it is stated:

"The undisputed testimony establishes the fact that the contract, by reason of the transactions that took place between the parties, became and was an executed contract."
But the type of contract contended for by appellant in the lower court, and in this court, is not an executed contract, as is forcibly pointed out in Mr. Justice Morgan's opinion. There are ample findings of the trial court, supported by evidence, that the instrument in question was not an executory contract for the sale and purchase of real property, that could be enforced during the lifetime of Fackrell. And, even though the two specific findings set forth in the special concurring opinion are not supported

by the evidence, the findings of the court that are supported with ample evidence are sufficient to support the judgment of the lower court. Therefore, the judgment of the lower court should not be reversed by reason of such findings complained of.

Certainly the respondent, in the lower court, was not required to do more than meet the issue and theory presented by appellant. Under our method of trying cases in the district court, it was not incumbent on respondent to anticipate new and additional theories that might later be advanced by the supreme court, which would bring success to appellant's cause. If that were so, respondent, in the first instance, should have been required in the trial court to submit his evidence to meet such anticipated issue, and if respondent has not done so he should not be permitted to do it now. According to the majority opinions the trial court should have decided in favor of the appellant. In returning the case to the lower court with directions to permit the introduction of additional testimony, it can only be on the theory that respondent shall have the privilege of introducing evidence on a new theory advanced by this court, which respondent was not given the opportunity to meet at the former trial.

This is not a new question in this state. This court has consistently and repeatedly held that litigants are not permitted to switch theories when coming to this court, and if litigants are not permitted to change their theory of the case from that advanced in the trial court, I fail to find any justification for the supreme court doing it for them. In *Fouch v. Bates,* 18 Ida. 374, 384, 110 Pac. 265, the court said:

"Some question is raised as to the effect of the return of the deed in January, 1900, by respondent to Bates, which deed was executed by Bates and wife to respondent. It is contended that the great weight of authority is to the effect that the return of a deed by a grantee to the grantor, even with the intention to reinvest the grantor with title, does not reconvey any title to the grantor. That may be true as a rule of law, but this case was not tried upon that

theory, but was tried upon the theory that Bates held the legal title, and we shall decide it upon the theory on which it was tried.''

Mr. Justice Rice, speaking `for the court, in *Brown v. Hardin*, 31 Ida. 112, 115, 169 Pac. 293, said:

''The cause was tried upon the theory that the counter-claim alleged an agreement on the part of the bank to accept the proceeds of the sale of the property by Wilson, whether such proceeds should be cash or notes or other securities, and to pay to respondent the excess of the proceeds, if any over the indebtedness due the bank by the respondent. The briefs of both the appellant and respondent agree upon this point. In the brief of appellant we find the following: 'Defendant claims that one G. H. Brown, an officer of said bank, agreed for the bank that such sale was to be with the approval of the bank, and that the bank accepted the proceeds of such sale in full settlement of the defendant's notes and would render to defendant any overplus.' Respondent in his brief states appellant's contention as follows: 'Appellant claims that the only agreement made by the bank with respondent was that the proceeds of the sale made by Wilson Brothers were to be applied on the indebtedness of respondent to the bank on the notes in suit.'

''Both parties having tried the cause upon the same theory as to the issue tendered by the pleadings, they are bound by the theory so adopted.''

Again in *Hindman v. Oregon Short Line R. R. Co.*, 32 Ida. 133, 136, 178 Pac. 837, this court said:

''While it is doubtful whether the complaint is sufficient to tender an issue under the statute requiring railroads to fence, this defect is cured by the allegations in the answer. At any rate, the case was tried upon the theory that the issue raised was under the statute above referred to and this court has recently held that 'where both parties to an action try their case upon the same theory as to the issue tendered by the pleadings, they are bound by the theory so adopted.' (*Brown v. Hardin*, 31 Ida. 112, 169 Pac. 293.)''

And in *Idaho Gold Dredging Corp. v. Boise Payette Lbr. Co.*, 52 Ida. 766, 776, 22 Pac. (2d) 147, this court said:

"Furthermore, the parties to an action are bound by the theory on which they try it. This case was not tried on the theory that the injury to appellant's property was temporary. There is neither allegations nor proof that the presence of grease and oil on the watershed and in the dredge pond was abatable, nor when, if ever, it might be expected to abate itself, nor was any instruction requested based on the theory of an abatable nuisance."

Further, in the same case the court said:

"In *Bielman v. Chicago, St. Paul & Kansas City Ry. Co.*, 50 Mo. App. 151, it was urged that the difference in value of property before and after injury by a nuisance which could be abated was not the proper measure of damages. The court said: 'However, the defendant cannot now be heard to complain of the measure of damages adopted in this case; for as appears by the record the case was tried, and witnesses questioned by both sides without objection, on the theory that if plaintiff was entitled to recover at all the measure of his damages would be the depreciation in value of the property brought about by the location of the stock yards.'"

In *Peterson v. Universal Automobile Ins. Co.*, 53 Ida. 11, 20 Pac. (2d) 1016, 1022, we held:

"The appellant will be held to the same theory on which the case was tried in the lower court. . . . . The appellant having assumed that it was incumbent upon him to allege and prove the allegations of his amended complaint, and, while doing so, establishing the fact that he was not entitled to recover on the theory on which the case was tried, he will be held to that theory, notwithstanding the fact that respondent did not allege the breach of the terms of the policy as an affirmative defense."

The appellant is not before us complaining that the lower court should have held that the transaction was an executed gift, or executed contract, but that the court erred in not holding that the instrument was an executory contract enforceable during the lifetime of the deceased. As to that

about which the appellant complains, the majority opinions say that the lower court was right. As I understand the duties of this court, we are to pass upon the issues as presented by the litigants, but not to frame the issues and advance the theories upon which one or the other of the litigants may successfully prosecute their claim. I, therefore, respectfully dissent.

Givens, J., joins in this dissenting opinion.

ON PETITION FOR REHEARING.

MORGAN, J.—█ Respondents have filed a petition for rehearing wherein our opinion is criticised on the theory that it goes beyond the issues framed by the petition for specific performance of the contract, filed in the probate court by appellant, and the objections thereto, filed by respondents. This criticism disregards the scope of I. C. A., sec. 15–1004, quoted in the opinion. That section does not confine the probate court, the district court nor us, to the issues framed by the petition and objections thereto, but requires that a decree be entered authorizing and directing the executor or administrator to execute a conveyance if, after a full hearing on the petition and objections, *and examination of the facts and circumstances of the claim*, the court is satisfied petitioner is entitled thereto.

In this case, while the petition declares on an executory contract, the evidence introduced shows a completed gift, *inter vivos*, which, as pointed out in the opinion, is an executed contract and is within the scope and meaning of I. C. A., sec. 15–1001. That evidence should have been accepted and acted on in the discharge of the duty of the court to make "examination of the facts and circumstances of the claim." It will not be necessary to amend the petition, should a further hearing be had in the district court, as authorized in the opinion, for the court is directed by sec. 15–1004 to go beyond the issues framed by the petition and the objections thereto and make an examination of all facts

and circumstances which have legal bearing on petitioner's claim of right to the conveyance of the property in question, including evidence heretofore introduced and hereafter to be introduced, if any, with respect to that claim.

Respondents question the jurisdiction of the probate court to enforce a completed gift and cite *Dewey v. Schreiber Implement Co.*, 12 Ida. 280, 85 Pac. 921; *Miller v. Mitcham*, 21 Ida. 741, 123 Pac. 141; *Estate of Blackinton*, 29 Ida. 310, 158 Pac. 492. They also urge that, if anything is left to be done, the gift is not completed and the promise to make it is unenforceable.

A gift, *inter vivos*, where equitable title has passed from the giver to the recipient, and where a deed of conveyance is only necessary in order to make the title merchantable, is within the jurisdiction of the probate court the same as is an executory contract whereby a deceased, in his lifetime, became obligated to convey real estate and died before making the conveyance.

Idaho Constitution, art. 5, sec. 21, provides:

"The probate courts shall be courts of record, and shall have original jurisdiction in all matters of probate, settlement of estates of deceased persons, and appointment of guardians; . . . . "

Construing that section this court held, in *Dewey v. Schreiber Implement Co.*, above cited, that probate courts were not thereby granted equity jurisdiction other than that which they might be called upon to exercise in matters of probate, settlement of estates of deceased persons, and appointment of guardians.

No doubt it was because of the limited jurisdiction, in equity, of the probate court, that the legislature has required it to dismiss the petition for specific performance if, upon hearing, the right to it is found to be doubtful. In this case, as the record now stands, appellant's right to a deed is not doubtful. It is true the district court found that "it does not appear to the court that Willard Fackrell ever intended the contract to take effect in his lifetime"; also "that Willard Fackrell, deceased, did not, by the contract in question, intend to convey the property in question

to his sister, Mrs. Annie Fackrell Wilson, at the time of the delivery of the contract to her, . . . . '' These findings are not supported by the evidence for it shows an intention on Fackrell's part to convey the equitable title and ownership, by the contract, of a two-thirds interest in the property in question to appellant.

We have directed that the parties be given an opportunity to offer additional evidence in the district court tending to show whether or not a gift of this interest in the property was made by Fackrell to his sister during his lifetime, not because the evidence in the record leaves any doubt that he did so, but in order that the parties may have an opportunity to offer any additional evidence they may have in view of the holding that a completed gift, *inter vivos,* is within the scope and meaning of I. C. A., sec. 15–1001.

Much has been said in this case to the effect that parties to an action are bound, in this court, by the theory on which the case was tried. We are committed to that rule, but it is subject to the limitation that it will be enforced only when injustice will not result therefrom. There are those who apparently believe it is the duty of a court to follow precedent, although injustice result in so doing. We do not subscribe to that theory.

The petition for rehearing is denied.

BUDGE, C. J., Concurring Specially in the Opinion on Rehearing.—In my opinion the judgment of the district court should be set aside with directions to enter up a judgment in favor of appellant and to certify said judgment back to the probate court for execution in accordance with the views heretofore expressed in my specially concurring opinion. (I. C. A., sec. 11–406; *Fraser v. Davis,* 29 Ida. 70, 156 Pac. 913, 158 Pac. 233; *Collins v. Lindsay,* 33 Ida. 230, 191 Pac. 357.) However, in view of the fact that two members of the court have dissented and two members of the court have concluded that an opportunity should be given ''to offer additional evidence in the district court tending to show whether or not a gift of this interest in the property was made by Fackrell to his sister during his lifetime, not

because the evidence in the record leaves any doubt that he did so, but in order that the parties may have an opportunity to offer any additional evidence they may have in view of the holding that a completed gift, *inter vivos,* is within the scope and meaning of I. C. A., sec. 15–1001'' and as a result of the above situation a final determination of the case is left in uncertainty, I have concluded to concur in the conclusion reached in that portion of the opinion on rehearing to which reference has been made.

HOLDEN, J., Concurring Specially in the Opinion on Rehearing.—The judgment of the trial court ought to have been reversed as heretofore directed herein, for the reason that the court found: ''and it does not appear to the court that Willard Fackrell ever intended the contract to take effect in his lifetime,'' and also for the further reason that the court erroneously concluded ''that the said Willard Fackrell never intended said contract to become effective during his lifetime.'' That finding of fact is contrary to the evidence and said conclusion is contrary to law.

And this court having directed that the parties be given an opportunity to offer additional evidence for the purpose and for the reason stated by Justice Morgan, I, therefore, concur in the foregoing opinion denying the petition for a rehearing.

Givens and Wernette, JJ., adhere to their views heretofore stated.