[Civ. No. 16272. First Dist., Div. One. Mar. 15, 1955.]

EMMA L. LAMB, Appellant, v. WALTER A. LAMB, Respondent.

Stanley Block and Henry Muller for Appellant.

Raymond A. Ferrario, Wilfred J. Harpham and Hammond K. Holt for Respondent.

BRAY, J.—An interlocutory decree awarded plaintiff a divorce upon the ground of extreme cruelty. She appeals from those portions of that decree relating to the character and disposition of property, and pursuant to section 956, Code of Civil Procedure, asks review of the order denying motion for new trial.

### QUESTIONS PRESENTED

1. Is the determination that all of the real and personal property of the parties was community property supported by the evidence?

2. Was the division of the property fair?

3. Did the court err in denying plaintiff's motion for new trial?

### 1. *Community Property.*

The court found that all of the real and personal property was community property, additionally that it was treated in the pleadings as such, that the case was tried on that theory, that approximately $4,000 of plaintiff's separate funds were used in the acquisition and improvement of the community property, that said funds were commingled after marriage with the earnings of both parties and their borrowings, and that it is impossible to trace separate funds into any particular property. The character of the property was

purely a factual matter, and the findings are amply supported. Most of plaintiff's contentions are based upon the assumption that only plaintiff's testimony should be believed although contradicted by defendant. It was for the trial court to pass upon the credibility of the parties. This it did. We cannot interfere with its determination of that issue. A brief résumé of the evidence concerning the various properties will be given.

Prior to marriage the parties were living together. Plaintiff, in her maiden name and with her own money, purchased lots on Louisiana Street, Oakland, and two old houses which were moved onto the property. Much of the work of remodeling them was done by defendant. Plaintiff claims she paid him for his services. He denies it. Three thousand one hundred thirty-five dollars of plaintiff's own money went into the purchase and remodeling of the houses. (Plaintiff owned and still owns other property in Alameda from which she derived $40 per month.) June 9, 1948, the parties borrowed money on the Louisiana Street property, depositing $2,000 in a joint bank account. (It is not clear whether they borrowed $2,000 or $3,000 and, if the latter sum, what became of the additional $1,000. Most of the money in the bank account went to repair the house.)

The parties married June 19, 1948, and moved into the unfinished house at 696 Louisiana Street. Plaintiff did not remember how much money she had in the bank at that time. Defendant estimated it to be between $200 and $600. Defendant had about $100. Before the remodeling was completed defendant became disgusted and told plaintiff he would do no more work on the houses unless he received some interest in the property. Pursuant to this discussion and in order to prevent defendant from thinking she wanted to marry him only to get the remodeling completed, plaintiff then conveyed the property in joint tenancy to ''Walter Lamb and Emma Lamb.'' Defendant testified that although there was no understanding as to whether this property was to be community or otherwise he understood it to be ''a joint partnership deal,'' and was theirs for the rest of their lives. While he felt he should have as much to say about it as she, if she ''wanted to take over, that was all right. I never stopped her.''

Defendant during the day worked as a bus driver. Plaintiff was employed most of the time. At night both parties worked at finishing the house. In order to buy building

materials and a new car, the parties borrowed frequently. Their joint earnings and the proceeds of the loans were deposited in a joint bank account. The before-marriage loan was paid out of it. Most of the new loans were used in improving the two houses on the Louisiana Street lots. Plaintiff had a separate bank account. Most of the deposits in it came from the $40 per month rental from her Alameda property. Their living expenses came from their joint earnings.

One of the houses and its lot was sold to one Stephens for $9,500, with a down payment of $3,500. There is a balance due now of around $4,000 on the note and deed of trust on the property. The note was payable to the parties as joint tenants. The other house and lot was sold for $11,500 in 1950, and then reconveyed to the parties as joint tenants in 1952 on default of the purchaser. With the $3,500 above mentioned plus at least $1,000 of their own funds the parties made a down payment on property in San Leandro, title being taken in joint tenancy. During the course of marriage the parties acquired furniture, appliances, tools, an auto, a trailer and other miscellaneous items. In April, 1952, the parties contemplated a separation and executed a property settlement agreement which will hereafter be discussed. Defendant testified that the parties continued to live together until September, 1952, and the court so found. Plaintiff denied this. However, plaintiff admitted that during that period the parties continued to negotiate for additional property, went to the doctor's office together, lived in the same house until October, and generally held themselves out as husband and wife.

 Undoubtedly at the time of the marriage even though defendant had done considerable work in the repairing or remodeling of the houses on it, the Louisiana Street property was plaintiff's separate property. After marriage plaintiff conveyed it to herself and defendant in joint tenancy. This raised a presumption that it was no longer her separate property nor their community property. (See *Gudelj* v. *Gudelj*, 41 Cal.2d 202, 212 [259 P.2d 656]; *Perkins* v. *West*, 122 Cal.App.2d 585, 589 [265 P.2d 538].)

Plaintiff contends that defendant's refusal to work on the houses unless he received an interest in them amounted to "duress." This contention is too absurd to require answer. Obviously the transfer constituted a gift. The court was not bound by the form of the deed. (*Faust* v. *Faust*, 91 Cal.

App.2d 304 [204 P.2d 906].) ▇ From the commingling of their money and their efforts, their borrowings and all the circumstances of the case, the court was well justified in holding the property to be community property, even though "the presumption arising from the form of the deed may not be rebutted solely by evidence as to the source of the funds used to purchase the property." (*Gudelj* v. *Gudelj*, *supra*, 41 Cal.2d at p. 212.) Particularly is this so in view of the later action of the parties. In the property agreement defendant agreed to relinquish to plaintiff all his interest, "community or otherwise," in the San Leandro property and in the deeds of trust covering the Louisiana Street property, while plaintiff agreed to relinquish to defendant her interest, "community or otherwise," in most of the personal property. In both her original complaint and in her first amended complaint plaintiff alleged all of their property to be community property. Defendant admitted this and in his cross-complaint alleged that the property involved here was the community property of the parties. Plaintiff's answer to the cross-complaint was a general denial.

▇ Pursuant to the property settlement agreement defendant executed to plaintiff a quitclaim deed to the San Leandro property. Plaintiff contends that it thereupon became her separate property. That would be the presumption but as shown hereafter the property settlement agreement and the deed executed pursuant to it were rescinded. Plaintiff in her first amended complaint alleged that defendant had "disallowed" the property settlement agreement and plaintiff prayed that the court disregard the agreement. In his answer defendant admitted this allegation. The admissions of the parties in the pleadings that the property was community property (see *Silverstein* v. *Silverstein*, 76 Cal. App.2d 872 [174 P.2d 486], to the effect that a party's admission in a pleading may control as against his testimony as to the character of the property), the resumption of marital relations after the execution of the agreement and the deed pursuant thereto and the conduct of the parties* shows a mutual rescission of the agreement, and by inference, of the deed. ". . . if parties, after separation, become reconciled and lived together, that fact will avoid the deed.

---

*After execution of the agreement and deed the parties lived together as man and wife for over five months, had sexual intercourse. 696 Louisiana Street was reconveyed to them as husband and wife in joint tenancy and the parties moved back there from the San Leandro home.

(Bright's Husband and Wife, 349.) The reason of the doctrine is obvious. The object of the deed is to provide for the maintenance of the wife whilst living separately from her husband; but, if reconciliation and cohabitation take place, her maintenance being obligatory upon him, the consideration of the deed fails.'' (*Wells* v. *Stout*, 9 Cal. 479, 498.) *Brown* v. *Brown*, 170 Cal. 1, 7 [147 P. 1168], held that subsequent reconciliation and cohabitation operated as an executed oral agreement, which was sufficient to set aside and annul a property agreement.

It should be pointed out that in October, 1952, an interlocutory decree of divorce was entered by default. This decree approved the property settlement agreement. On November 19th this decree was set aside and vacated. The agreement was made in contemplation of separation. It recited that the parties had separated (although they actually had not) and that a divorce action was contemplated. Such an agreement is cancelled by a reconciliation and resumption of the marital rights and privileges. (See cases cited in *Sanguinetti* v. *Sanguinetti*, 51 Cal.App. 347 [196 P. 799]. See also *Auclair* v. *Auclair*, 72 Cal.App.2d 791, 799 [165 P.2d 527].)

As to the personal property, the evidence amply supports the finding that it is community property. The down payment on the Oldsmobile came from funds derived from 696 Louisiana Street, which was community property. The remainder of the payments for the car, plus purchase of furniture, tools, etc., likewise came from community funds.

No records were kept by the parties as to what became of their separate funds. They were so commingled with community earnings and with each other that it was impossible to determine them. Therefore, the presumption that the family expenses were paid out of community funds (*Huber* v. *Huber*, 27 Cal.2d 784 [167 P.2d 708]) is of no help here. See *Pope* v. *Pope*, 102 Cal.App.2d 353 [227 P.2d 867], for effect of commingling separate and community funds. Plaintiff admitted that she could not say how much of the $40 per month rental from her separate property went into the Louisiana Street property other than the indefinite statement that ''the biggest part of'' it did. ''If it should appear that separate property has become mixed or confused with the product of the work of a spouse or with community interests of any kind, it is incumbent upon the party contending for the separate estate to clarify the history of the

property and to demonstrate, not to an exactitude, but to that degree of proof that clearly and convincingly satisfies an unprejudiced mind, that the property is separate property. [Citation.] The burden of proof is upon the claimant of the property as separate estate.'' (*Estate of Fellows,* 106 Cal.App. 681, 684 [289 P. 887].)

As to the court's findings that plaintiff abandoned all claim of separate property and that the pleadings alleged the property to be community property and that the case was tried on that theory, plaintiff contends that waiver must be pleaded (it was not here) and that the findings of waiver and theory of the case were not supported. We deem it unnecessary to decide this contention for the reason that the judgment is well supported by the findings as to the character of the property and the evidence in support thereof, so that if the findings of waiver and theory of the case were erroneous, such fact would not affect the judgment.

2. *Division Was Fair.*

Plaintiff was awarded (1) the Stephens note of $4,000 and deed of trust securing it (the court stated that this substantially compensated plaintiff for her separate monies that were invested in the two Louisiana Street properties) ; (2) the real property at 696 Louisiana Street subject to an encumbrance of approximately $3,200; (3) all household furniture, furnishings, appliances and equipment; (4) $600 (as being half of the value of the 1940 Oldsmobile).

Defendant was awarded (1) the Oldsmobile, value $1,200, less $600 payable to plaintiff, net value $600; (2) the San Leandro property subject to an encumbrance of $6,700; (3) trailer.

■ Apparently in dividing the property the court placed these valuations upon it:

| Awarded plaintiff: | | Awarded defendant: | |
|---|---|---|---|
| Stephens note | $ 4,000 | Auto | $ 600 |
| 696 Louisiana Street, $12,000 less encumbrance of $3,200— net value | 8,800 | San Leandro property, value $13,500— less encumbrance $6,700 | 6,800 |
| Furniture, etc. | 3,000 | Trailer | 50 |
| Cash | 600 | Tools (no value fixed by court) — plaintiff claims | 1,000 |
| Total | $16,400 | Total | $8,450 |

The failure of the court to place a value on the tools is of no importance, particularly as according to plaintiff's own valuation they could not be worth over $1,000. See *Pope* v. *Pope, supra,* 102 Cal.App.2d 353, where this court held that the trial court's failure to place an exact valuation on the community property was not error.

We agree with plaintiff that furniture and furnishings originally purchased for between $3,000 and $4,000 were too highly valued by the court. But taking plaintiff's valuation of $1,500, the property awarded plaintiff would still be worth $14,900 as against the $8,450 value awarded defendant. (In this figure we have accepted plaintiff's valuation of the tools, which is probably too high.) Plaintiff contends that as the court in awarding her the $4,000 note stated that this substantially compensated her for her separate monies that went into the Louisiana Street properties, that sum cannot be considered in determining whether the court actually awarded her over half of the community property. Assuming, without deciding, this contention to be correct, plaintiff still received a value of $10,900 as against a value of $8,450 received by defendant. ▮ The law only requires that the party to whom a divorce is awarded on the ground of extreme cruelty receive more than half of the community property. How much more than half is largely in the discretion of the trial court and the trial court's division in that respect can only be upset on a showing of abuse of discretion. (*Cash* v. *Cash,* 110 Cal.App.2d 534, 537 [243 P.2d 115]; *Barry* v. *Barry,* 124 Cal.App.2d 107, 113 [268 P.2d 147].) We find no abuse of discretion here.

### 3. *Denial of Motion for New Trial.*

In her affidavit on motion for new trial plaintiff took issue with the court's finding that she had abandoned her claims of separate property and that her pleadings admitted that the property was community property. She pointed out that although in her complaint and her first amended complaint she had alleged the property to be community property, she had by her answer to defendant's cross-complaint denied his allegation that it was community property. She then claimed that her community property allegations were made through inadvertence and mistake, and that the property settlement agreement was never introduced into evidence. She desired an opportunity to introduce it. She points out that there was a clause in the agreement to the effect that it was not to be revoked by a reconciliation

of the parties and states that when she verified the complaint she was not aware of the significance of the allegation therein "that defendant has disallowed said property settlement agreement and plaintiff prays that the Court disregard said agreement." She points to the court's finding "it is impossible from the evidence to trace said separate funds to any particular property" and asks for an opportunity to show by an accountant's analysis that her separate funds are traceable. She then states that her former attorney failed to follow her instructions to introduce in evidence two checks of payments made by her for certain improvements made to the San Leandro property after the entry of the first interlocutory decree.

There is nothing in any of the foregoing which would compel the granting of a new trial. Although the agreement was not introduced in evidence it was called to the attention of the court. ■ The clause to the effect that it was not to be revoked in case of a reconciliation would not control over the evident intention of the parties after reconciliation to revoke it. The case was tried on the theory advanced by plaintiff in her complaint that it had been revoked. It is significant that although the agreement was before the court during the trial, plaintiff at no time asked that it be confirmed. ■ After a trial on a theory advanced by a party, that party, because dissatisfied with the outcome, may not claim inadvertence in presenting the theory. The inadvertence should have been discovered during the trial. There was no showing as to why, if it existed, it was not so discovered. All of the matters referred to in the affidavit were matters which either were or could have been before the court at the trial. The affidavit shows that plaintiff, not having been as successful as she thought she ought to be on the trial, merely wants to try the case over again. The granting or refusal of a new trial is in the discretion of the trial court. (See cases collected in 20 Cal.Jur. § 13, pp. 27, 28; 8 Cal.Jur. 10-yr. Supp. pp. 484-487; 1951-1954 Cal.Jur.Supp. pp. 793-794.)

The judgment is affirmed. In the interests of justice, each party shall bear his or her own costs. (Rule 26, Rules on Appeal.)

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied April 14, 1955, and appellant's petition for a hearing by the Supreme Court was denied May 11, 1955.