312 P.2d 1028

Matter of the ESTATE of Daniel J. LUNDY, Deceased.

Joe M. LUNDY, William M. Lundy, and Ann Nelson, Plaintiffs-Appellants,

v.

Mary Jane LUNDY, Administratrix, Defendant-Respondent.

Nos. 8450, 8451.

Supreme Court of Idaho.

June 26, 1957.

H. J. Felton, Lewiston, for appellants.

Morgan & Morgan, Lewiston, for respondent.

TAYLOR, Justice.

Daniel J. Lundy died intestate April 13, 1952. April 23, 1952, respondent, Mary Jane Lundy, widow of deceased, filed petition for letters of administration. Her petition recites that she had previously, on April 18th, been appointed special administratrix.

The appellants are two sons and a daughter of deceased from a prior marriage. On May 3, 1952, appellant, William Lundy, filed objections to the appointment of respondent; alleged that the deceased had left a will and prayed that it be admitted

to probate. After a hearing and some delay the court entered its order rejecting the probate of the purported will and appointed respondent administratrix February 26, 1953. In the meantime, on May 26, 1952, the court had entered its order directing payment to respondent of the sum of $100 per month as a family allowance for her support, and that such payments begin with the month of May, 1952, and continue until the further order of the court.

Inventory and appraisement was filed July 31, 1953, fixing the appraised value of the estate at $15,831.83. August 26, 1953, respondent petitioned the court to set aside a probate homestead. August 31, 1953, appellants filed objection to the inventory, alleging that the property, inventoried as community property, was the separate property of the deceased. Appellants also filed objection to the petition to set aside a homestead, alleging that the property which respondent sought to have set apart for that purpose was the separate property of the deceased, and that the widow had waived any homestead right she may have had therein.

The claim that the property listed was separate property of the deceased and that respondent had waived her homestead right is based upon a quitclaim deed, executed by respondent as grantor and delivered to the deceased as grantee, dated July 13, 1949, and recorded July 23, 1949; and upon a quitclaim deed, from respondent as grantor to the deceased, dated July 10, 1950, which was not recorded; and upon a written property settlement agreement entered into by respondent and deceased July 10, 1950. By this latter instrument the property of the parties was divided, respondent receiving certain personal property, and the deceased receiving the same real estate, described in the two quitclaim deeds, and certain personal property. The quitclaim deed of July 10, 1950, was executed and delivered pursuant to the agreement. The agreement recites that irreconcilable differences have arisen between the parties and that the first party (respondent) contemplates proceedings for divorce, and that the agreement is made for the purpose of determining and settling their property rights and liabilities. The agreement contains the usual provision for mutual release of all rights and claims by each party against the other, past or future, and that in the event of the death of either party, the survivor agrees not to claim any part of the property of the other, but that such property shall go to the heirs of the deceased free of any claim by the survivor.

Respondent filed an answer to the objections in which she alleged that she and decedent had been husband and wife for ten years; that the property inventoried was acquired during the marriage; that the quitclaim deed of July 13, 1949, was void for the reason that it was executed and delivered by her by reason of duress, coercion, and undue influence exercised

upon her by deceased and that it was totally without consideration. The duress and undue influence is alleged to have arisen out of cruel treatment of respondent by the deceased during the latter part of 1948 and the first part of 1949. She alleges that because of his treatment of her, she was on the point of a stroke or breakdown; that her doctor had recommended that she go away for a vacation. She desired $100 from deceased to enable her to go to visit at the home of her son; that deceased refused the request unless she would give him the deed; that she gave the deed because of her necessity and his insistence and that in return for it he gave her $100 of community funds.

As to the deed and property settlement agreement of July 10, 1950, she alleges those instruments were executed in pursuance of an agreement between the parties to discontinue the marriage relation and the obtaining of a divorce by respondent; that on the same day the agreement and deed were executed, a divorce complaint was prepared by the same attorney, signed by respondent and filed the next day, July 11th; that as a part of the consideration for the agreement the deceased gave respondent his promissory note for $800, payable to her in installments of $100 each month, commencing August 15, 1950; that $100 was paid by deceased thereon; that on or about August 17, 1950, the respondent and decedent effected reconciliation and resumed cohabitation and agreed with each other that the documents that had been signed on July 10th would be cancelled and of no further effect; that pursuant to this agreement of reconciliation respondent dismissed her divorce action August 17, 1950, and that she and decedent lived together as husband and wife from the date of reconciliation until his death.

At the opening of the hearing on the objections to the inventory appellants objected to the introduction of any evidence on the ground that the probate court lacked jurisdiction to consider the issues raised by the objections. On October 26, 1954, the court entered its findings, conclusions, and order overruling and dismissing the objections to the inventory.

As to family allowance, the court found that no further order had been made subsequent to the order of May 26, 1952; that the estate was solvent and that respondent's need for such allowance continued; and that the allowance be continued during the progress of the settlement of the estate, or until the further order of the court. No appeal was taken from either the order of May 26, 1952, or the order of October 26, 1954, providing for the family allowance. These being appealable orders, § 17–201, I.C., subsection 4, and no appeal having been taken therefrom, they became final. Short v. Thompson, 56 Idaho 361, 55 P.2d 163.

Upon the petition and request of appellants, the probate court on November 15,

1954, ordered respondent to render an accounting of her administration within five days. The accounting was filed November 18, 1954, and on the same day respondent filed her petition for authority to sell property of the estate in order to pay its obligations.

November 27, 1954, appellants filed objections to the accounting and to the petition for authority to sell property of the estate, and a petition on their part for final distribution to them of all the property of the estate as the sole heirs of the deceased. After hearing, the probate court on December 1, 1954, entered its order authorizing the sale of property; an order setting apart to respondent as surviving spouse certain exempt personal property; an order approving the account, and directing the payment of claims and expenses as soon as money for that purpose is available. This last order recites that an order was entered November 9, 1954, setting apart certain property as a homestead for respondent. The order of November 9th does not appear in the record.

December 10, 1954, appellants filed notice of appeal to the district court, describing the orders appealed from as follows:

"1. Decree Setting Aside A Probate Homestead, dated November 9, 1954;

"2. Order Approving Accounting, and the orders made therewith, designated Order Authorizing Sale of Personal Property and Order Setting Apart Exempt Personal Property, all made and dated December 1, 1954;

"3. Orders dated the 1st day of December, 1954, refusing the appellants' Petition for Distribution."

January 19, 1955, respondent filed in the probate court her final account and petition for distribution. This petition, in addition to setting out the property and condition of the estate, alleges in greater detail the duress, coercion and undue influence by which the deed of July 13, 1949, was executed; also, the property settlement agreement, quitclaim deed, promissory note and divorce complaint of July 10th; the subsequent agreement of reconciliation, and the resumption of the marital relationship between respondent and deceased. She also alleged her efforts and preparation to sell property of the estate so that she could pay the obligations and file her final account by December 20th, the date to which the court had previously continued the hearing of appellants' petition to require such accounting; that by reason of the appeal from the order authorizing the sale, the sale negotiated by respondent could not be concluded; and that, although the estate could not be distributed, the respondent requested the probate court to hear her final account and determine all other questions raised by appellants which could be determined at that stage of the proceedings and in view of the pending appeal; and that she

be allowed to refrain from compliance with any orders entered upon such determinations until the same became final.

May 6, 1955, appellants filed their objections to the final account and petition for distribution in which they allege that the issues presented were pending on appeal in the district court, and that the final account is untimely and improper. The probate court overruled these objections, proceeded to hear the petition and on May 23, 1955, entered its findings, conclusions and order settling the final account, decreeing that all property of the estate was the community property of decedent and respondent and she is the sole and only heir, and entitled to distribution of all that remains of the estate after the debts and charges are paid, and directing that she refrain from selling any of the property until the order authorizing her to do so becomes final.

On June 28, 1955, appellants filed notice of appeal to the district court from the order and decree of May 23, 1955. Over objection of appellants, the district court combined the two appeals and after trial of the issues entered its judgment affirming the orders of the probate court. This appeal from the district court followed.

■ The first question presented is the propriety of the action of the district court in combining the two appeals for trial. We think this was proper. In re Estate of Blackinton, 29 Idaho 310, 158 P. 492. Except as to the contention of appellants that the probate court lacked jurisdiction to hear and determine the final account and petition for distribution, because of the pendency of the first appeal, the ultimate issues in the two appeals are the same. Likewise, the parties are the same. In support of their contention that the first appeal stayed proceedings in the probate court, appellants cite the statute, § 13–208, I.C., providing that the appeal "stays all further proceedings in the court below upon the judgment or order appealed from, or upon the matters embraced therein," apparently made applicable by § 15–1509, I.C.

The subsequent proceedings in the probate court were limited to determination of matters not finally determined by the orders first appealed from, except as to the accounting, sale of property and the payments of debts, and as to these the probate court preserved the status quo pending the outcome of the appeal.

■ The order which appellants describe in their first appeal as "an order refusing the appellants' petition for distribution" and supplied by augmentation of the record here, is not a final order on that issue. It recites that appellants' petition for distribution was taken under consideration and "it is hereby found and ordered that the estate is not ready for distribution at this time." See § 15–1132, I.C. Appellants admitted in the probate proceedings

that there were unpaid bills and, upon the trial, appellants' counsel informed the district court that it was his position "that no closing of the estate can be had until all bills are paid." It is questionable whether that particular order was appealable. § 17–201, I.C.

It does not appear that the appellants were in any way prejudiced by the subsequent proceedings in the probate court, nor was the appellate jurisdiction of the district court infringed. Widener v. Miller, 155 Okl. 2, 11 P.2d 170.

▮ As to jurisdiction, it is appellants' contention that title to real property was put in issue, and that the probate court lacked jurisdiction to try such issue. It is the general rule that where title to real property is in issue between an estate and its heirs and a third person, such issue must be tried in an independent action brought for that purpose in a competent tribunal and cannot be tried by the probate court. § 15–803, I.C.; Douglas v. Douglas, 22 Idaho 336, 125 P. 796; In re Estate of Blackinton, 29 Idaho 310, 158 P. 492; Simonton v. Simonton, 33 Idaho 255, 193 P. 386; Gray v. Gray, 78 Idaho 439, 304 P.2d 650; In re Griffin's Estate, Okl., 189 P.2d 933; Wilson v. Superior Court, 101 Cal.App.2d 592, 225 P.2d 1002; Shelton v. Vance, 106 Cal.App.2d 194, 234 P.2d 1012.

▮ However, this is not such a case. Here the issue is between the administratrix claiming as sole heir and appellants claiming they are the sole heirs. In probate proceedings the probate court is a court of record and has "original jurisdiction in all matters of probate, settlement of estates of deceased persons, and appointment of guardians". Const. Art. 5, § 21. See also §§ 15–1307, R15–1701, R15–1706, I.C. We have held that this probate jurisdiction bestowed on the probate court by the constitution is exclusive. Fraser v. Davis, 29 Idaho 70, 156 P. 913, 158 P. 233; Larsen v. Larsen, 44 Idaho 211, 256 P. 369; Short v. Thompson, 56 Idaho 361, 55 P.2d 163; Moyes v. Moyes, 60 Idaho 601, 94 P.2d 782. The applicable rule was set out by Justice Ailshie in Miller v. Mitcham, 21 Idaho 741, at page 745, 123 P. 941, 942:

"The foregoing authorities clearly and fully establish the proposition that the probate courts have exclusive original jurisdiction in the settlement of estates of deceased persons; and it is within the jurisdiction of those courts to determine *who are the heirs of a deceased person, and who is entitled to succeed to the estate and their respective shares and interests therein.* The decrees of probate courts are conclusive in such matters. A probate court, however, does not have jurisdiction to determine adverse claims or an adverse title to real estate, except in so far as such questions arise between the heirs or devisees of an estate, and are necessary to be determined in the administration of the estate. No such

jurisdiction, however, exists in the probate court to determine and adjudicate adverse and conflicting claims to title to real estate as between the estate or heirs thereof and third parties; and such issues can only be tried in a court of competent jurisdiction, where the issue as to title and interest is directly and squarely made and presented to the court."

The same rule was applied in: Connolly v. Probate Court, 25 Idaho 35, 136 P. 205; White v. Smith, 43 Idaho 354, 253 P. 849; In re Estate of Randall, 64 Idaho 629, 132 P.2d 763, 135 P.2d 299; and in other jurisdictions: Bauer v. Bauer, 201 Cal. 267, 256 P. 820; In re Nolan's Estate, Ariz., 108 P.2d 391; In Griffin's Estate, Okl., 189 P.2d 933; Chowning v. Fountain, Okl., 192 P.2d 846. In this case in order to determine who are the heirs of deceased, it was necessary that the probate court determine whether the property was the community property of deceased and respondent or whether it was the separate property of deceased. To enable the probate court to perform its function of determining heirship, it must be recognized as having jurisdiction to determine specific issues involved in that process, and arising between parties to the estate proceedings. Here no stranger or third party is involved. The issue is drawn between rival claimants to heirship. As between such parties the probate court has jurisdiction to settle all issues essentially involved in a determination of who are the heirs, and the distributive share or shares of each. Const. Art. 5, § 21; Miller v. Mitcham, supra.

In order to determine whether the property was community or separate and thus to determine to whom it should descend it was necessary for the probate court to pass upon the validity of the quitclaim deeds and the property settlement agreement.

"Whether the property was separate property or community property was one of the questions to be determined by the probate court and by the parties submitted to that court for its decision. That court had authority to determine the persons who, by law, were entitled to the property, and also the proportions or parts to which each was entitled, who were the heirs of the deceased, and who were entitled to succeed to the estate, and their respective shares and interests therein." Larsen v. Larsen, 44 Idaho 211, at page 215, 256 P. 369, at page 370.

As to the quitclaim deed of July 13, 1949, there is competent evidence of coercion and duress. This is supported by inadequacy of consideration. Assuming decedent's one-half of the $100 of community funds, paid for the deed, was available to him as consideration for the deed, $50 is inadequate pay for the wife's one-half interest in property appraised at $6,210.05. Moreover, deceased did not rely on the deed of July 13, 1949. The identical property is

described in the property settlement agreement and the quitclaim deed of July 10, 1950.

■ When husband and wife, in contemplation of divorce, enter into a property settlement agreement dividing the community property, and thereafter are reconciled and resume cohabitation as husband and wife, agreeing that the settlement agreement be cancelled, the result is a mutual rescission of the settlement and other instruments effectuating it. Brown v. Brown, 170 Cal. 1, 147 P. 1168; Gregg v. Manufacturers' Bldg. Corporation, 134 Cal. App. 147, 25 P.2d 1014; Peters v. Peters, 16 Cal.App.2d 383, 60 P.2d 313; Lamb v. Lamb, 131 Cal.App.2d 489, 280 P.2d 793; Annotation 35 A.L.R.2d 707; 42 C.J.S. Husband and Wife § 601.

The validity of the settlement contract as affected by considerations of public policy is not raised, and we do not pass on that question.

■ The evidence supports the trial court's findings and conclusion that the reconciliation agreed upon between deceased and respondent comes within the above rule. Except for physical cancellation of the instruments signed July 10, 1950, the reconciliation agreement was fully executed by the parties. Respondent promptly dismissed her suit for divorce, and the parties lived amicably as husband and wife from the date of reconciliation, August 17, 1950, to the death of Lundy, April 13, 1952. The property was thus restored to its former status.

The attack upon the orders setting apart a probate homestead and exempt personal property, is also based upon the quitclaim deeds and property settlement agreement, and falls with the cancellation of those instruments.

■ Appellants urged that respondent's right to attack the quitclaim deed of July 13, 1949, on ground of duress, fraud or undue influence is barred by the three year statute of limitations, § 5–218, I.C. Assuming this statute to be applicable, it was tolled by the death of Lundy within the three year period. § 5–231, I.C. Respondent initiated her claim to the property when she filed her inventory claiming it as community property, July 31, 1953, and to the "home place" when she filed her petition to set it apart as a homestead August 26, 1953, in which she alleged it was community property; all within one year after letters of administration were issued.

Furthermore, since another deed to the identical property was given by respondent to deceased July 10, 1950, and was cancelled by the reconciliation agreement, it is apparent the parties either regarded the deed of July 13, 1949, invalid, or intended to cancel it also.

Judgment affirmed. Costs to respondent.

PORTER, SMITH and McQUADE, JJ., and NORRIS, D. J., concur.