404 P.2d 621

**Lyman C. ACRE, Administrator of the Estates of Louise Elizabeth Acre and Lyman E. Acre, Deceased, Plaintiff-Respondent,**

v.

**Edith I. (Acre) KOENIG, Contestant-Appellant.**

No. 9345.

Supreme Court of Idaho.

Aug. 2, 1965.

C. J. Hamilton, Coeur d'Alene, for contestant-appellant.

Smith, Kimball & Reed, Coeur d'Alene, for plaintiff-respondent.

SMITH, Justice.

Appellant, formerly known as Edith I. Cain Acre, and Lyman E. Acre were married October 17, 1953. At that time each owned separate real property, having adjoining farms in Kootenai County. In April, 1956, they executed a property settlement agreement which they did not cause to be recorded. Thereafter Mrs. Acre filed a suit for divorce, attaching the agreement to her divorce complaint. Soon thereafter the parties became reconciled and caused dismissal of the divorce action. They then lived together as husband and wife until the death of Mr. Acre, August 11, 1959. Mrs. Acre thereafter married one Koenig.

Proceedings were commenced for the joint probate of the estate of Lyman E. Acre, deceased, and of the estate of decedent's first wife, Louise Elizabeth Acre, deceased. All interests in property acquired by the first wife were community in character and descended to Lyman E. Acre, thus creating the separate character of his property, prior to his subsequent marriage to appellant.

The Order Settling Final Account and Decree of Distribution in the matter of the estate of Lyman E. Acre, deceased, by its terms recognized the farm property probated in the matter of the estates of the de-

cedents as having been the separate property of Lyman E. Acre at the time of his death. The decree distributed such property to decedents' six surviving children only, in equal shares, and denied to appellant any distributive share thereof. The probate court thus treated the aforesaid property settlement agreement as being in effect which, inter alia, provided:

"Each party hereto waives any and all right to the estate of the other left at his or her death and forever quitclaims any and all rights to share in the estate of the other by the laws of succession, * * * and each hereby waives any and all rights of homestead in the real property of the other * * *."

Appellant herein, having duly filed her objections to the entry of the Order and Decree, appealed therefrom to the district court. That court after a trial without a jury found that the property settlement agreement was in effect at the time of Mr. Acre's death, and awarded all of his separate property to his surviving children and entered judgment confirming the Account and the Decree of Distribution except as to minor particulars not here pertinent. Appellant has appealed from the judgment.

Appellant assigns error of the trial court in finding that the property settlement was in effect at the time of Lyman E. Acre's death, and in affirming the Account and Decree of Distribution in the matter of decedent's estate. The assignments of error attack the findings of the trial court to the effect that after the filing of the divorce action and the subsequent reconciliation of Mr. and Mrs. Acre, they "continued to treat their property and incomes and deal therewith in accordance with the agreement up to the time of Lyman Acre's death," and in concluding and adjudging accordingly. The assignments present the question whether the evidence is sufficient to sustain the findings and resultant judgment.

Florence G. Acre, the wife of the administrator in the instant proceeding, testified to a conversation had shortly before July 4, 1959, at the home of Lyman C. Acre, administrator and son of Lyman E. Acre. Those present included the witness, her husband, Lyman E. Acre and his wife Edith, who is the appellant herein. In answer to a question as to what was the conversation had, she stated:

"A. Well, they were talking about the property settlement. They both said they had the agreement that neither would have anything of the other's separate property."

Mr. Sadler, a brother-in-law of the administrator, testified concerning several visits to his home by Mr. and Mrs. Lyman E. Acre. On one occasion the Acres and Sadler and wife were present. Sadler stat-

ed that he was acquainted with the adjoining farms which the Acres owned. He then related the substance of a conversation:

"A. Well, I asked Lyman whether he was going to merge, him and Edith, whether they were going to merge the property. No, he says, we have a gentlemen's agreement as to what is his is his and what is hers is hers, and anything we accumulated after we married of course is community property."

Appellant then rebutted the testimony relating to the conversation to which Florence Acre testified. Appellant stated that "no conversation took place concerning the property settlement agreement, at the time and place mentioned by Florence, i. e., prior to July 4, 1959; also, that no conversation relating to the agreement was had at any time during the year 1959, with the witness and Lyman C. Acre in the presence of Florence.

Appellant advances the premise that where spouses, in contemplation of divorce, enter into a property settlement agreement dividing their property and thereafter become reconciled "and resume cohabitation, *agreeing that the settlement agreement be cancelled* and the parties restored to their original rights in said property, there is a mutual rescission of the settlement." That premise is well supported by the authorities cited by appellant. See Lundy v. Lundy, 79

Idaho 185, 312 P.2d 1028 (1957); Brown v. Brown (1915), 170 Cal. 1, 147 P. 1168; Gregg v. Manufacturers' Bldg. Corporation (1933), 134 Cal.App. 147, 25 P.2d 1014; Peters v. Peters (1936), 16 Cal.App.2d 383, 60 P.2d 313; Mundt v. Connecticut General Life Ins. Co. (1939), 35 Cal.App.2d 416, 95 P.2d 966; Lo Vasco v. Lo Vasco (1941), 46 Cal.App.2d 242, 115 P.2d 562; Whitlow v. Durst (Cal.App.1942), 121 P.2d 810; In re Brimhall's Estate (1943), 62 Cal.App.2d 30, 143 P.2d 981; Lamb v. Lamb (1955), 131 Cal.App.2d 489, 280 P.2d 793; In re Ray's Estate (1931), 304 Pa. 421, 156 A. 64, 79 A.L.R. 772; Anno. 35 A.L.R.2d 707; 42 C.J.S. Husband and Wife § 601.

Appellant stresses the case of Weeks v. Weeks (1940), 143 Fla. 686, 197 So. 393, which enunciated the rule that reconciliation of a husband and wife and resumption of marital duties will void a previous contract in settlement of property rights. That decision discloses however that the Florida court regarded the instrument as a separation agreement, and one of the questions involved was whether a resumption of the marital relation abrogated a separation agreement. The authorities cited by the Florida court support the rule that resumption of the marital relation does abrogate a separation agreement. See Dillon v. Dillon (1919), 103 Neb. 322, 171 N.W. 917; Cole v. Waldrop (1924), 204 Ky. 703, 265 S.W. 274; Harrison v. Harrison (1919),

201 Mo.App. 465, 211 S.W. 708; Carl v. Carl, 166 N.Y.S. 961 (Sup., 1917); Graves v. Graves, 174 N.Y.S. 615 (Sup., 1918); Ahrens v. Ahrens (1917), 67 Okl. 147, 169 P. 486; Anno. 40 A.L.R. 1229; See also Anno. 35 A.L.R.2d 702.

In the case at bar the trial court found that "the document entered into between Lyman E. Acre and Edith I. Acre was a property settlement agreement as distinguished from a separation agreement."

The Annotation 35 A.L.R.2d 707 § 2 (1954) contains a dissertation well supported by authorities relating to the nature of and difference between the separation agreement and the property settlement. It is stated therein (p. 712) that the principal functions of a separation agreement are: (1) to stipulate that it shall be lawful for the parties to live separate and apart until, by mutual agreement, the separation is ended; (2) to provide for the support of the wife; and (3) to provide concerning the custody and support of the children; that such an agreement generally recites "unhappy differences" of the parties and that they are either living apart or intend to separate at once. The author observes that "such agreements are feasible even if the parties do not own any property."

Concerning the property settlement the annotation states:

"On the other hand, the function of the true property settlement is to make a full and final determination of the rights of the parties and with respect to joint and separate property. * * * And mutual releases of all claims are common provisions of property settlements.

"The property settlement shall provide for the future in several respects. For example, in community property states the contract should provide that the earnings and income of each spouse shall be and remain his or her separate property. It should provide that each presently releases, waives and surrenders all present and future right in the property, now or hereafter owned or acquired by the other * * * including community, * * * homestead, and rights under the laws of intestate or of descent and distribution * * * etc. It is customary to agree that each will execute all deeds, releases and other instruments required to effectuate the property settlement."

The annotation (p. 714) also states the majority rule, well supported by authorities, that reconciliation and renewed cohabitation abrogates a separation agreement, although in some jurisdictions, whether a separation agreement survives upon reconciliation and resumption of cohabitation depends upon the intentions of the parties to be determined from their statements, conduct and surrounding circumstances.

The annotation points to authorities which well support the proposition that a property settlement, particularly as to its executed provisions, is not abrogated by reconciliation and renewed cohabitation alone, but that the intention of the parties must govern; and that the parties may agree to rescind orally or by an additional agreement in writing.

Applying the aforesaid rules to the agreement involved herein, it meets the test of a *property settlement*. It states that the parties are living separate and apart; that they own community and separate property and that they desire and intend *to make a full and final settlement of all their property rights*. They then agree as to separation of the community personalty; and agree that certain described real property is the separate property of Edith I. Cain Acre, and that other described real property is the separate property of Lyman E. Acre. They then agree that the wife shall retain her separate property, and the husband his separate property, free from any claims of the other, with appropriate covenants of waiver and release flowing each to the other, including any right of homestead in the real property of the other, and to any right of inheritance from the other; nor does either party agree to support the other.

The record herein shows reconciliation and renewed cohabitation of the parties, but nothing further as regards any intention of the parties to set aside the property settlement. See Plante v. Gray (1945), 68 Cal.App.2d 582, 157 P.2d 421; In re Winter's Estate (1948), 164 Kan. 615, 192 P.2d 186. A settlement agreement is not affected by such conduct unless the parties agree that the settlement be terminated, Lundy v. Lundy, 79 Idaho 185, 312 P.2d 1028 (1957); Anno. 35 A.L.R.2d 707, 720.

The judgment of the district court is affirmed.

Costs to respondent.

McQUADE, C. J., and McFADDEN, TAYLOR and KNUDSON, JJ., concur.