597 P.2d 211

Kenton R. PINCOCK and Shirley H. Pincock, husband and wife, Plaintiffs-Respondents, Cross-Appellants,

v.

POCATELLO GOLD AND COPPER MINING COMPANY, INC., a corporation, Tejan Enterprises, Inc., a corporation, and Jim Desfosses and Jane Doe Desfosses, husband and wife, and all known owners of any interest in certain real property, situated in Bannock County, Idaho, Defendants-Appellants, Cross-Respondents.

No. 12548.

Supreme Court of Idaho.

June 27, 1979.

Lloyd J. Webb, of Webb, Burton, Carlson, Pedersen & Paine, Twin Falls, Dale W. Kisling, of Maguire, Kisling & Ward, Pocatello, for defendants-appellants, cross-respondents.

Hartwell H. K. Blake, of McDermott & McDermott, Pocatello, for plaintiffs-respondents, cross-appellants.

DONALDSON, Justice.

This is an appeal from a summary judgment in favor of the plaintiffs-respondents, Kenton and Shirley Pincock, in a case involving a rather unusual ownership dispute over a group of six mining lode claims commonly known as the Lion Group Mining Claims, located northeast of the City of Pocatello. Pocatello Gold and Copper Mining Company, Limited (P.G. & C., Ltd.), incorporated in 1902 and defunct since 1921 because of its failure to file an annual statement and to pay its statutory fees, acquired a patent to this property (123.388 acres) in 1914, pursuant to patent number 389357, and recorded it in Fort Hall Mining District of Bannock County. At least so far as the record discloses P.G. & C., Ltd. never transferred its interest in these mining claims.

In 1961, one of the original subscribing stockholders of P.G. & C., Ltd., Nathan M. Eldredge, died owning 506,304 shares of P.G. & C., Ltd. common stock. In his will he left the residuary real and personal property in his estate to Kenton and Shirley Pincock. Shirley Pincock served as administrator of Eldredge's estate.

During probate of Eldredge's estate, the probate court of Bannock County ordered the first and final account of Shirley Pincock approved. That account listed the Lion Group Mining Claims as part of Eldredge's residuary estate and made no mention of Eldredge's P.G. & C., Ltd. stockholdings. The court further ordered and decreed:

"[T]hat all other property belonging to said deceased at the time of his death, or in which he had any interest, whether discovered or undiscovered, be, and the same is hereby distributed to Kenton R.

Pincock and Shirley H. Pincock, share and share alike. That the balance of said property in the hands of said executrix, so far as known, and hereby distributed to said Kenton R. Pincock and Shirley H. Pincock . . . is particularly described as follows, to wit:

[listing two other parcels of land, the Lion Group Mining Claims and some personal property not including the P.G. & C., Ltd. stock.]"

On October 22, 1973, the Pincocks filed a quiet title action alleging that they were the owners in fee simple of the Lion Group Mining Claims. They claimed ownership on the basis of the decree of final distribution on Eldredge's estate or, in the alternative, adverse possession either upon a written claim under I.C. § 5–207 or upon an oral claim under I.C. § 5–210. The defendants-appellants, Pocatello Gold and Copper Mining Co., Inc. (P.G. & C., Inc.), Tejan Enterprises, Inc., Jim Desfosses and his wife, answered the complaint putting the Pincocks' ownership of the claims into issue.[1]

The Pincocks moved for a summary judgment submitting one affidavit as husband and wife and the additional affidavit of Shirley Pincock individually. The first affidavit avers: that the Pincocks obtained title to the claims by virtue of the 1961 decree of the Bannock County Probate Court; that they have been paying all real property taxes on the claims since 1966; that they have visited the property at least monthly during the summer months since 1961 and occasionally during the winter; that they posted the property on various occasions, occasionally gave various organizations permission to use the property and leased the property for sheep range; that on two occasions since the filing of this action the Pincocks have removed gates and locks constructed by an adverse party attempting to block their access to the property.

In the second affidavit, Shirley Pincock avers that by virtue of the final decree of distribution of Eldredge's estate, she owns 506,304 shares of P.G. & C., Ltd.; that she also has had in her possession an additional 131,524 shares of P.G. & C., Ltd. stock; that in the summer of 1955, she was present when one Paul Desfosses, father of James Desfosses, came to Eldredge's home to inquire into whether Eldredge would sell the mine claims involved here; that she was present when Eldredge subsequently arranged to have a letter sent to Paul Desfosses and his associates to ensure no misunderstanding about his claimed ownership of the land and their attempted trespass upon it.

Appellants submitted two affidavits of Paul James Desfosses, president and manager of P.G. & C., Inc. and president and manager of Tejan Enterprises, Inc. in opposition to the Pincocks' motion. Those affidavits contend that the Desfosses' corporations' interest in the Lion Group Mining Claims is based upon assignments of common stock in P.G. & C., Ltd. from owners of stock originally issued to E. C. Manson, J. I. Guheen, D. M. Daniels, Joshua Munn and James Bean.[2] Desfosses further avers that he has entered the property in dispute once or twice a month during each summer since 1953 to check location markers and generally maintain the property. Desfosses and his father built a road to the property in 1956, which Desfosses has maintained and graded ever since and upon which he did extensive repair work in 1971 and 1973. In 1969 and ever year since, Desfosses has attempted to pay the property taxes on the mining claims. However since 1969 the Bannock County Treasurer has refused to accept these payments.

In 1971, P.G. & C., Inc. filed mining location notices on each of the six claims con-

1. P.G. & C., Inc. is an Idaho Corporation which is completely unrelated to the defunct P.G. & C., Ltd.

2. Along with her individual affidavit, Shirley Pincock submitted the affidavit of James W. Priestly which states that he holds the stock

certificates originally issued to James Bean by P.G. & C., Ltd. and that Desfosses has no interest in that stock. The affidavit of Arlene Ethel Pearson makes the same claim to the stock formerly owned by Joe Munn to which Desfosses also claims an interest.

tained in the Lion Group Mining Claims. Desfosses also filed assessment work for the 1971 tax year. Desfosses states in his affidavit that he did erect a gate on the property. That gate was torn down in 1972, replaced by Desfosses and then torn down again two or three times the following year.

The district court granted the Pincocks' motion for summary judgment, and filed a memorandum and order in December, 1976.[3] The court did not specify on what grounds it granted its summary judgment. The appellants then brought this appeal. We reverse the order of the district court granting the summary judgment and remand this action for further proceedings.

It is well settled in Idaho that a trial judge should not grant a motion for summary judgment if the evidence, construed in the light most favorable to the party opposing the motion (here P.G. & C., Inc.) presents a genuine issue of material fact or shows that the respondent (the Pincocks) is not entitled to judgment as a matter of law. *Pullin v. City of Kimberly,* 100 Idaho 34, 592 P.2d 849 (1979); *see* I.R.C.P. 56(c). If either condition is satisfied, summary judgment was improper and must be reversed. *Id.* In our opinion the record in this case is replete with genuine issues of material fact and shows that the Pincocks are not entitled to a judgment as a matter of law.

We first focus on the facts surrounding the decree of distribution in the Eldredge estate which devised the Lion Group Mining Claims to the Pincocks. It is the Pincocks' contention that they hold title to this group of claims by virtue of that probate decree. Further, even if that degree does not vest title to the claims in the Pincocks, they argue that the probate decree is a written claim of title for purposes of adversely possessing the claims under I.C. §§ 5–207 and 5–208.

■ In the first instance, one of the most glaring deficiencies in the record is the absence of any showing whatsoever that the titleholder of the disputed proper-

ty, P.G. & C., Ltd., ever transferred its interest in the property to Nathan Eldredge. Clearly, a will can only properly dispose of the property owned by the decedent at the time of his death. *Stone v. Fisher,* 65 Idaho 52, 139 P.2d 479 (1943). The record shows that at the time of Eldredge's death, the title to the property, now in dispute, was in the defunct P.G. & C., Ltd. Eldredge did own over one-half million shares of P.G. & C., Ltd. stock at the time of his death. However, the ownership of part of the stock of a corporation does not in and of itself evolve into ownership in fee of an asset belonging to that corporation so as to be distributable as part of an individual stockholder's estate. As a matter of law, the Pincocks were not entitled to a judgment quieting title to the property in them based solely on the probate decree.

The Pincocks in their brief point out that at the time of settling Eldredge's estate no one filed any competing claims on the disputed property. In addition, the probate court distributed the property to the Pincocks, and the time for appealing that distribution has since passed. The Pincocks conclude, relying on *Horn v. Cornwall,* 65 Idaho 115, 139 P.2d 757 (1943), that the judgment of the probate court operates as res judicata to bar relitigation of the facts surrounding the inclusion of the disputed property in Eldredge's estate and therefore the validity of the Pincocks' title based on the decree of distribution. We disagree.

■ The Idaho Supreme Court based its holding in the *Horn* case on the ground that because the probate court had jurisdiction to order a certain manner of distribution and because the parties to the probate proceeding did not make a timely motion to set aside or modify the decree or fail to prosecute a direct appeal, the final decree of distribution became final and conclusive upon all parties to the probate court proceedings. Further, because statutory notice had been given all the world was charged

---

3. The Pincocks cross appeal the trial court's denial of their attorney fees. Given our disposition of this case we do not reach that issue.

with notice and would be bound. This holding assumed that the probate court had jurisdiction over the assets of the distributable estate to make a decree of distribution. *See In re Lundy's Estate,* 79 Idaho 185, 312 P.2d 1028 (1957); *Douglas v. Douglas,* 22 Idaho 336, 125 P. 796 (1912). The Court in *Horn* specifically stated that an "order of the probate court settling the final account of an executor, administrator or guardian is a judgment in rem, final and conclusive against all the world after the time for appeal has expired." *Horn v. Cornwall, supra,* 65 Idaho at 121–122, 139 P.2d at 760. By "judgment in rem" the court was clearly referring to that real and personal property which is properly includable in the decedent's estate. The Court's language cannot be construed as allowing a decree to dispose of property which did not in fact belong to the decedent. Justice Ailshie set out the applicable rule in *Miller v. Mitcham,* 21 Idaho 741, 745, 123 P. 941, 942 (1912):

> "[T]he probate courts have exclusive, original jurisdiction in the settlement of estates of deceased persons, and it is within the jurisdiction of those courts to determine who are the heirs of a deceased person and who is entitled to succeed to the estate and their respective shares and interests therein. The decrees of probate courts are conclusive in such matters. A probate court, however, does not have jurisdiction to determine adverse claims or an adverse title to real estate, except in so far as such questions arise between the heirs or devisees of an estate, and are necessary to be determined in the administration of the estate. No such jurisdiction, however, exists in the probate court to determine and adjudicate adverse and conflicting claims to title to real estate as between the estate or heirs thereof and third parties, and such issues can only be tried in a court of competent jurisdiction where the issue as to title and interest is directly and squarely made and presented to the court."

This Court applied the same rule in: *In re Lundy's Estate, supra; In re Estate of Randall,* 64 Idaho 629, 132 P.2d 763, 135 P.2d 299 (1942); *White v. Smith,* 43 Idaho 354, 253 P. 849 (1926); *Connolly v. Probate Court,* 25 Idaho 35, 136 P. 205 (1913).

■ In the instant case, the record discloses a factual question as to whether P.G. & C., Ltd. or its statutory trustee(s) ever conveyed the Lion Group Mining Claims to N. M. Eldredge. The resolution of this issue will determine whether Eldredge was ever the record owner of the mining claims, so as to justify their inclusion in his estate. Given the absence of any showing that Eldredge was ever the record owner of the mining claims, it would appear that the probate court had no jurisdiction over the property to decree its distribution to the Pincocks. Thus it would also appear that the probate decree had no res judicata effect with respect to the mining claims, and, that the Pincocks did not take a fee interest in the claims solely by virtue of that decree.

The Pincocks also argue that even if their title to the disputed property is defective, they still established their claim of possession under a written instrument pursuant to I.C. § 5–207 and § 5–208.[4] P.G. & C.,

---

4. 5–207. Possession under written claim of title.—When it appears that the occupant, or those under whom he claims, entered into the possession of the property under claim of title, exclusive of other right, founding such claim upon a written instrument, as being a conveyance of the property in question, or upon the decree or judgment of a competent court, and that there has been a continued occupation and possession of the property included in such instrument, decree or judgment, or of some part of the property under such claim, for five (5) years, the property so included is deemed to have been held adversely except that when it consists of a tract divided into lots, the possession of one lot is not deemed a possession of any other lot of the same tract.

5–208. Claim under written instrument—Possession defined.—For the purpose of constituting an adverse possession by a person claiming a title founded upon a written instrument, or a judgment or decree, land is deemed to have been possessed and occupied in the following cases:

1. Where it has been usually cultivated or improved.

2. Where it has been protected by a substantial inclosure.

Inc. essentially responds that the Pincocks' argument erroneously assumes that the Pincocks could in fact hold this property adversely to the interests of the P.G. & C., Ltd. shareholders and their successors in interest. Appellants suggest that when P.G. & C., Ltd. forfeited its charter in 1921, the directors of that corporation under the Idaho Compiled Statutes § 4767 (1919) (today I.C. § 30–159) became trustees of the creditors and stockholders, or members of the dissolved corporation and had full power to settle the affairs of the corporation.[5] P.G. & C., Inc. argues, based on *Fortner v. Cornell*, 66 Idaho 512, 163 P.2d 299 (1945), that the directors, as statutory trustees, were under a fiduciary obligation to faithfully wind up the corporation's affairs, collect its assets, pay creditors and distribute the balance ratably among the stockholders. P.G. & C., Inc. urges this Court to recognize that since there was no evidence indicating that the statutory trustees either agreed to or did in fact convey the disputed property to N. M. Eldredge, and since it appears from the record that Eldredge did serve as a statutory trustee for P.G. & C., Ltd., the Pincocks, by virtue of the decree of distribution, received a transfer of trust property which constituted a wrongful conversion of the disputed property. According to appellants, the Pincocks, as the transferees of the property from Eldredge, are therefore constructive trustees who could not hold the mining claims adversely to the successors in interest of the original P.G. & C., Ltd. stockholders.

■ Having reviewed the record, we are of the opinion that there is a genuine issue of material fact as to whether N. M. Eldredge was a statutory trustee for P.G. &

C., Ltd. under Idaho Compiled Statutes § 4790. In pertinent part I.C.S. § 4790 provides:

"In all cases of forfeiture under the provisions of this chapter, the directors or managers in office of the affairs of any domestic corporation whose charter may be so forfeited . . . or any other person or persons may be appointed by any court of competent jurisdiction to perform that duty, are deemed to be trustees of the corporation . . . ."

The only showing in the record that Eldredge was a corporate trustee under the above statute is Exhibit F of the augmented record. Exhibit F is a letter written in 1955 on behalf of Eldredge in regard to the trespass of one Paul A. Desfosses on the disputed property. The author of the letter, Eldredge's attorney, specifically referred to Eldredge as the "surviving statutory trustee" of P.G. & C., Ltd. In addition, the minutes from a meeting in March of 1919 indicate that Eldredge was to serve in some management capacity for P.G. & C., Ltd., in the year 1920. In our view this evidence does not resolve the important question of whether Eldredge was a director or manager of P.G. & C., Ltd. at the time it forfeited its charter so as to be a corporate trustee or whether a court of competent jurisdiction appointed him to serve in such a capacity.

The importance of this factual determination is apparent. If Eldredge served as a statutory trustee, he was under a fiduciary duty to settle the affairs of the corporation, collect its assets, pay creditors and distribute the balance ratably between the stockholders.[6]

---

3. Where, although not inclosed, it has been used for the supply of fuel, or of fencing timber for the purposes of husbandry, or for pasturage, or for the ordinary use of the occupant.

4. Where a known farm or single lot has been partly improved, the portion of such farm or lot that may have been left not cleared, or not inclosed, according to the usual course and custom of the adjoining country, shall be deemed to have been occupied for the same length of time as the part improved and cultivated.

5. In his affidavit in opposition to the motion for summary judgment, Paul J. Desfosses states that P.G. & C., Ltd. forfeited its charter "for failure to file its annual statement and pay necessary fees." This being the case, the applicable Idaho Compiled Statute is § 4790 (today I.C. § 30–611).

6. The record does not disclose whether there was ever any form of ratable distribution of P.G. & C., Ltd.'s assets to the stockholders or their successors in interest.

 However, even assuming arguendo that the trier of fact finds that Eldredge was not a statutory trustee, genuine issues of material fact still remain to be resolved to determine the validity of the Pincocks' claim of ownership on the basis of adverse possession. Under Idaho case law the rule is that the party seeking to quiet title against another must succeed on the strength of his own title, and not on the weakness of that of his adversary. *Nelson v. Enders*, 82 Idaho 285, 353 P.2d 401 (1960); *White v. Ames Mining Co.*, 82 Idaho 71, 349 P.2d 550 (1960); *Stickel v. Carter*, 63 Idaho 78, 117 P.2d 477 (1941). It was the Pincocks' burden then, pursuant to I.C. § 5–207, to establish the following by clear and satisfactory evidence (*Standall v. Teater*, 96 Idaho 152, 525 P.2d 347 (1974); *Smith v. Smith*, 95 Idaho 477, 511 P.2d 294 (1973)): (1) that they entered into possession, as that term is defined by I.C. § 5–208, of the disputed property; (2) under a claim of title, which claim in this case is founded upon a decree of a competent court; (3) exclusive of other right; (4) that there has been a continued occupation and possession of the disputed property described in the decree of distribution; (5) that they have so held the property for five years; and (6) that they have paid all taxes, state, county or municipal, which have been levied and assessed upon such land according to law.[7]

 We have reviewed the record and are of the opinion that there still remain genuine issues of material fact as to whether the Pincocks entered into possession of the disputed property as that term is defined in I.C. § 5–208; whether the Pincocks acted in good faith so as to assert their adverse possession claim upon a claim of title under I.C. § 5–207; and whether the Pincocks, if they were in possession, possessed the property exclusively and continuously after 1961.

Based on the foregoing discussion, we reverse and remand this action for further proceedings in accordance with this opinion.

SHEPARD, C. J., and McFADDEN and BISTLINE, JJ., concur.

BAKES, J., concurs in result.

---

7. Although the tax requirement is stated in I.C. § 5–210, Oral claim—Possession defined—Payment of taxes—, the language of the proviso contained in this section makes it clear that the tax requirement also applies where a party asserts adverse possession on the basis of claim of title under I.C. § 5–207. The proviso of I.C. § 5–210 states:

"Provided, however, that in no case shall adverse possession be considered established *under the provisions of any sections of this code* unless . . . the party or persons, their predecessors and grantors, have paid all the taxes, state, county or municipal, which have been levied and assessed upon such land according to law." (emphasis ours)